UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY AND GUARANTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>STAR EQUIPMENT CORPORATION, CHARLENE B. FORAN, JOHN J. FORANS, and TOWN OF SEEKONK,<br><br>    Defendants. | 04 10250 EFH<br><br>CIVIL ACTION No. 00-cv-_____<br><br>MAGISTRATE JUDGE _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

This is a complaint seeking a declaration of the respective rights of the plaintiff Fidelity and Guaranty Insurance Company ("Fidelity") and the defendants Star Equipment Corporation ("Star"), Charelene B. Foran, John J. Forans (collectively, "the Forans"), and the Town of Seekonk ("Seekonk") under a surety performance bond ("the Bond") that Fidelity issued for a project in Seekonk, Massachusetts involving the installation of replacement watermains and appurtenant work ("the Project").

Briefly, Fidelity seeks a declaratory judgment that Fidelity is exonerated and discharged from any liability under the Bond because Fidelity cannot be liable under the Bond unless Star is liable under its contract, and Star and Seekonk mutually terminated their obligations under the contract. In the event that the contract has not been terminated, Fidelity seeks an order requiring Star to provide collateral security to Fidelity in an amount necessary to properly protect Fidelity against any claims and/or potential claims on the Bond.

## PARTIES AND JURISDICTION

1. The plaintiff, Fidelity, is a corporation created under the laws of the state of Iowa, with a principal place of business in Baltimore, Maryland.

2. Defendant Star is a Massachusetts corporation, with its principal place of business in South Easton, Massachusetts.

3. Defendant Charlene B. Foran, upon information and belief, is an individual residing at 30 Heath Road, South Easton, Massachusetts.

4. Defendant John J. Foran, Jr., upon information and belief, is an individual residing at 30 Heath Road, South Easton, Massachusetts.

5. Defendant Seekonk, is a municipality, with its principal place of business within its town limits.

6. The amount in controversy exceeds Seventy-Five Thousand Dollars. Jurisdiction is accordingly founded upon diversity of citizenship under 28 U.S.C. §1332, and additionally upon the Court's jurisdiction with respect to declaratory judgments, 28 U.S.C. §2201-2202.

## FACTS

7. On or about June 28, 2002, Star, Charlene B. Foran and John J. Foran ("Indemnitors") executed a General Agreement of Indemnity ("Indemnity Agreement") for the purpose of indemnifying Fidelity in connection with surety bonds executed by Fidelity on behalf of Star for certain projects. A copy of the Indemnity Agreement is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

8. On June 24, 2002, Star entered into a contract with Seekonk for the installation of replacement watermains and appurtenant work in Seekonk, Massachusetts ("the Contract"). A copy

of the Contract is attached hereto as Exhibit B and incorporated herein by reference.

9. Prior to performance of the Contract, Fidelity executed a performance bond (the "Bond") naming Star as Principal and Seekonk as Obligee. A copy of the Bond is attached hereto as Exhibit C and incorporated herein by reference.

10. The Bond provides that,

> [w]herever the said Principal shall be, and declared by the Owner to be, in default under the said Contract, the Owner having performed the Owner's obligations thereunder, the Surety, for value received, shall promptly remedy the default, or, at the option of the Owner, shall promptly (a) Complete the said Agreement and/or Contract in accordance with its terms and conditions, or (b) obtain a bid or bids for submission to and the approval of the Owner for completing the said Agreement and/or Contract . . .

11. Star proceeded with construction on the Project, but differences and disagreements arose. In or about August 2003, Star notified Seekonk that it encountered differing site conditions and requested additional compensation relative to the differing site conditions. Seekonk rejected Star's request for additional compensation.

12. Upon information and belief, representatives of Star and Seekonk, along with their attorneys, met on August 8, 2003 to discuss their differences. At the meeting, the parties agreed that Seekonk would pay Star for work completed and that relationship between Star and Seekonk would be dissolved. Seekonk's representatives agreed to calculate what Seekonk owed for work performed and represented that the information would be forwarded to Attorney Mark Patrick Greene (attorney for Star) within the week.

13. Subsequent to the August 8, 2003 meeting, Star ceased work on the project.

14. By letter dated September 11, 2003, Seekonk gave notice to Fidelity that Star was

in default of its contractual obligations and demanded that Fidelity perform its obligations under the Bond. Star responded by letters dated September 19, 2003 to Seekonk and to Fidelity, denying it was in default of the Contract. A copy of the September 11, 2003 and September 19, 2003 letters are attached hereto as <u>Exhibit D</u> and incorporated herein by reference.

15. By letter dated November 21, 2003, Fidelity gave notice to Star of Seekonk's notice of Star's default and demand that Fidelity take over and complete the project. The notice advised that "if, at the conclusion of our investigation, [Fidelity] finds that it needs to pay this claim it will seek reimbursement from you pursuant to the General Agreement for Indemnity . . ." A copy of the November 21, 2003 letter is attached hereto as <u>Exhibit E</u> and incorporated herein by reference.

16. By letter Fidelity dated December 11, 2003, Star denied that it was in default and asserted that Star and Seekonk "mutually agreed to cease performance, and to bring the contract to an orderly conclusion." Star further advised that "[i]f you insist on completing the work on this project, and subsequently turn to Star for reimbursement . . . Star will diligently defend its position." A copy of the December 11, 2003 letter is attached hereto as <u>Exhibit F</u> and incorporated herein by reference.

17. An Affidavit executed by Mark Patrick Greene (Star's counsel), on December 12, 2003 ("the Affidavit"), recounts the events of the August 8, 2003 meeting, where he states that he and Mr. Mangiaratti agreed that "the best course of action was to have the Town of Seekonk pay [Star] for work completed and to dissolve the relationship between the two parties." A copy of the Affidavit is attached hereto as <u>Exhibit G</u> and incorporated herein by reference.

18. By virtue of the foregoing, an actual controversy exists between Fidelity, Star and Seekonk as to whether Fidelity has any liability under the Bond.

## Count I

19. Fidelity repeats and realleges the averments of the foregoing paragraphs as if set forth here at full length.

20. Star and Seekonk agreed that Seekonk would pay Star for work completed and thereafter terminate the Contract, thereby relieving the parties of any further obligations under the Contract.

21. As a result of Star and Seekonk's mutual termination of the Contract and resolution of its terms, Fidelity has no liability under the Bond for the Project.

## Count II

22. Fidelity repeats and realleges the averments of the foregoing paragraphs as if set forth here at full length.

23. In the event the Contract was not terminated, Fidelity may be compelled to pay and satisfy the claims and/or other potential claims or demands on the Bond.

24. Fidelity possesses the equitable rights of Quia Timet and Exoneration to demand that the Defendants adequately secure or collateralize Fidelity prior to any payment by Fidelity. The Indemnity Agreement provides as follows:

> 12. In addition to the security interest granted hereunder, the UNDERSIGNED hereby assign, transfer, and convey to SURETY all of the rights and property that constitute the COLLATERAL. The assignment is for the purpose of enabling SURETY to take immediate possession of and to use any COLLATERAL upon the happening of an EVENT OF DEFAULT to complete the performance of the obligations of the UNDERSIGNED under a BONDED CONTRACT and to make payment of obligations incurred by the UNDERSIGNED in the performance of a BONDED CONTRACT.

. . .

    14.    Upon the happening of an EVENT OF DEFAULT, SURETY, at its option and in its sole discretion:

        (a)    may exercise (in compliance with all applicable securities laws) in respect to the COLLATERAL, in addition to other rights and remedies provided for herein or otherwise available to it . . .

25.    Fidelity's loss of its equitable rights of Quia Timet and Exoneration constitutes an irreparable harm for which there is no adequate legal remedy.

## Count III

26.    Fidelity repeats and realleges the averments of the foregoing paragraphs as if set forth here at full length.

27.    The Indemnity Agreement provides as follows:

    5.    Upon SURETY's reasonable belief that it may incur a loss on a BOND or BONDS, SURETY may demand and, upon SURETY's demand, the UNDERSIGNED shall deliver over to SURETY collateral security acceptable to SURETY to cover any contingent losses and any subsequent increase thereof.

28.    Fidelity has demanded that the Indemnitors deliver over to Fidelity collateral security sufficient to cover any losses on the Bond.

29.    The Indemnitors have not provided any collateral security, as required by the Indemnity Agreement, and is therefore in breach of the Agreement.

## Prayers for Relief

WHEREFORE, Plaintiff prays for relief as follows:

a. (1) Under Count I for a declaratory judgment pursuant to 28 U.S.C. § 2201 to the effect that the Star and Seekonk have mutually terminated the Contract and have resolved the terms thereunder, and therefore Fidelity has further liability under the Bond; or (2) under Count II for an order requiring Star to provide collateral security to Fidelity in an amount necessary to properly protect Fidelity against any claims and/or potential claims on the Lexington Bond; or (3) under Count III for a declaration that the Indemnitors are in breach of the Indemnity Agreement for failure to provide collateral security upon Fidelity's demand.

b. For such equitable relief that may be deemed proper; and

c. For attorney's fees and costs incurred in pursuing this action that may be allowed by statute or by contract; and

d. For such other and further relief as this Court deems just.

Dated: February 5, 2004

FIDELITY & GUARANTY INSURANCE COMPANY

By its attorneys,

Bradford R. Carver, BBO #565396
Jenny H. Cho, BBO# 651662
Cetrulo & Capone LLP
Two Seaport Lane
Boston, Massachusetts 02210
Tel: (617) 217-5500
Fax: (617) 217-5200

313000v1