UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY AND GUARANTY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) STAR EQUIPMENT CORPORATION, ) CHARLENE B. FORAN, JOHN J. FORAN,) and TOWN OF SEEKONK, ) ) Defendants. ) | Civil Action No.: 04-10250-EFH |

**DEFENDANT CHARLENE B. FORAN'S ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT, CROSS-CLAIMS AGAINST DEFENDANT, TOWN OF SEEKONK, AND JURY DEMAND**

**ANSWER**

**PARTIES AND JURISDICTION**

1. Defendant Charlene B. Foran, Foran (hereinafter "Star") is without knowledge or information sufficient to admit or deny the allegations contained in paragraph 1 of the plaintiff's complaint.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted that Star entered into a contract with Seekonk Water District, however the contract was signed on June 24, 2003 not June 24, 2002.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Denied.

## Count I

19. Defendant repeats its responses to paragraphs 1-18 of this answer as if set forth herein.

20. Denied. Star and Seekonk did agree that Seekonk would pay Star for work completed and that the only obligation left was for Seekonk to pay Star for completed, but the Contract was terminated by mutual agreement of Star and Seekonk on August 8, 2003.

21. Admitted.

## Count II

22. Defendant repeats its responses to paragraphs 1-21 of this answer as if set forth herein.

23. Denied.

24. Denied.

25. Denied.

## Count III

26. Defendant repeats its responses to paragraphs 1-25 of this answer as if set forth herein.

27. Admitted.

28. Denied.

29. Denied.

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

Plaintiff's injuries, if any, were caused by a third party.

#### SECOND AFFIRMATIVE DEFENSE

The plaintiff's complaint fails to state a cause of action upon which relief can be granted.

#### THIRD AFFIRMATIVE DEFENSE

The plaintiff failed to exhaust all avenues of appeal available to it.

### JURY CLAIM

The Cross-claimaint Charlene B. Foran, demands a trial by jury as to all counts and causes of action.

### CROSS CLAIMS

For a cross-claim against Town of Seekonk, defendant in the above entitled action, defendant Charlene B. Foran alleges:

1. On June 24, 2003, the cross-claimant, Star Equipment Corporation,

entered into a contract with the cross-defendant, Town of Seekonk, for the installation of replacement watermains and appurtenant work in Seekonk, Massachusetts ("the Contract"). (A copy of the pertinent Contract provisions is attached hereto as <u>Exhibit A</u>.)

2. Under the Contract, Section 0700, Special Condition 6, and under Massachusetts General Law ch. 30, Section 39N:

> "If during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor of the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions... Upon receipt of such a claim from a contractor..., the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of the performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly."

3. Under the Contract, Section 00700, Special Condition 6, and under Massachusetts General Law ch. 30, Section 39J:

> "a decision by the contracting body or by any administrative board, official or agency, or by an architect or engineer, on a dispute, whether of fact or law arising under said contract shall not be final or conclusive if such decision is made in bad faith, fraudulently, capriciously, or arbitrarily is unsupported by substantial evidence or is based upon error of law."

4. On or about July 15, 2003, the cross-claimant encountered site conditions that differed substantially or materially from those shown on the plans or indicated in the contract documents, specifically, the thickness and condition of the existing pavement along with the material directly under the pavement made it impossible for the cross-claimant to maintain a uniform trench.

5. The differing site conditions could not reasonably be known until after work was commenced.

6. The differing site conditions caused an increase in the cost of performance of the work to be performed by the cross-claimant.

7. On or about July 21, 2003, the cross-claimant informed the Project Engineer, David Jacobsen, of Amory Engineers, P.C., that the cross-claimant had encountered differing site conditions and made a request for an equitable adjustment to the Contract Price.

8. On July 23, 2003, the Project Engineer unreasonably rejected the cross-claimants request for an equitable adjustment to the Contract Price without supporting his decision with substantial evidence in violation of the Contract and M.G.L. ch. 30, sections 39J and 39N.

9. On July 29, 2003, the cross-defendant unreasonably rejected the cross-claimants request for an equitable adjustment to the Contract Price without supporting its decision with substantial evidence in violation of the Contract and M.G.L. ch. 30, sections 39J and 39N.

10. On August 1, 2003, the cross-claimant, through its attorney, formally challenged the cross-defendant's decision to deny an equitable adjustment to the contract price.

11. On August 6, 2003, the cross-defendant, through its attorney, scheduled a meeting for August 8, 2003 between officers of the cross-claimant and the cross-defendant to "have a candid and constructive discussion about all outstandaing disagreements between Star Equipment Corp. and the Seekonk Water District." (A copy

of this letter is attached hereto as Exhibit B.)

12. On August 8, 2003, officers of the cross-claimant and the cross-defendant as well as their respective attorneys met at the Law Offices of Volterra, Goldberg, Mangiaratti & Jacobs in Attleboro, Massachusetts. (See Affidavit of Attorney Mark Patrick Greene attached hereto as Exhibit C.)

13. At said meeting, Attorney Robert S. Mangiaratti, attorney for the cross-defendant, asked to speak privately with Attorney Mark Patrick Greene, attorney for the cross-claimant.

14. During their private conversation, both Attorney Mangiaratti and Attorney Greene expressed their beliefs that the working relationship between the two parties had deteriorated to the point that cooperation was in jeopardy.

15. Attorney Mangiaratti suggested, and Attorney Greene concurred, that the two parties were not likely to come to a consensus on the issue of differing site conditions, nor on the appropriate amount of compensation.

16. Attorney Mangiaratti suggested, and Attorney Greene concurred, that the best course of action was for the cross-defendant to pay the cross-claimant for work performed and to dissolve the relationship between the two parties.

17. Upon returning to the meeting, Attorney Mangiaratti and Attorney Greene explained the arrangement to the parties, specifically that the cross-defendant would compensate the cross-claimant for work already completed and that no further work would be performed under the Contract.

18. At that point, all parties consented to the arrangement and dissolved the existing Contract between the parties dated June 24, 2003.

19. Prior the dissolution of the contract between the parties, the cross-claimant was performing in compliance with the contract.

20. Attorney Mangiaratti assured Attorney Greene that the cross-defendant's representatives would calculate exactly what the cross-claimant was owed and forward this information to Attorney Greene early the following week.

21. Pursuant to the agreement reached by the two parties on August 8, 2003, the cross-claimant subsequently ceased work on the project.

22. Subsequent to August 8, 2003, the cross-claimant removed his equipment from the project site.

23. The cross-defendant did not provide the information promised to the cross-claimant at the August 8, 2003 meeting.

24. Approximately two weeks following the August 8, 2003 meeting, Attorney Greene contacted Attorney Mangiaratti and inquired into the information promised at the August 8, 2003 meeting. Attorney Mangiaratti apologized for the delay and informed Attorney Greene that the information was still being tabulated and would be forwarded within the next couple of days.

25. The following week, Attorney Mangiaratti assured Attorney Greene that he would forward the promised information.

26. Soonafter, Attorney Mangiaratti's associate, Attorney Max Volterra, contacted Attorney Greene and assured Attorney Greene that the information was forthcoming.

27. Finally, Attorney Volterra informed Attorney Greene that the cross-defendant was calculating its damages and would not be honoring the agreement made

contract executed by the parties on June 24, 2003.

37. As a consequence of the cross-defendant's action, the cross-plaintiff has incurred damages.

38. Wherefore, the cross-claimant, demands judgment against the cross-defendant for its full damages, plus interest, costs and attorneys' fees.

## COUNT II – BREACH OF CONTRACT

39. Cross-claimant realleges paragraphs 1-35 as if stated herein.

40. On August 8, 2003, the cross-claimant and the cross-defendant mutually agreed to rescind the Contract executed between the two parties.

41. On August 8, 2003, the cross-defendant agreed to compensate the cross-claimant for work already performed on the project.

42. On August 8, 2003, the cross-claimant and cross-defendant agreed to terminate the contract between the cross-claimant and cross-defendant.

43. Subsequent to August 8, 2003, the cross-defendant refused to pay the cross-claimant the money owed the cross-claimant for work performed in violation of the agreement made between the two parties on August 8, 2003.

44. As a consequence of the cross-defendant's action, the cross-plaintiff has incurred damages.

45. Wherefore, the cross-claimant, demands judgment against the cross-defendant for its full damages, plus interest, costs and attorneys' fees.

## COUNT III – INENTIONAL MISREPRESENTATION

46. Cross-claimant realleges paragraphs 1-42 as if stated herein.

47. The cross-defendant made misrepresentations to the cross-claimant that it

would honor the agreement entered into between the cross-claimant and cross-defendant on August 8, 2003 and on numerous occasions subsequent to August 8, 2003.

48. By making its misrepresentations to the cross-claimant, the cross-defendant intended the cross-claimant to rely on its misrepresentations.

49. The cross-claimant actually relied upon the misrepresentations of the cross-defendant to their detriment.

50. The plaintiff's reliance on the misrepresentation caused the plaintiff actual damages.

51. As a consequence of the cross-defendant's action, the cross-plaintiff suffered actual pecuniary loss.

52. Wherefore, the cross-claimant, demands judgment against the cross-defendant for its full damages, plus interest, costs and attorneys' fees.

## COUNT IV - NEGLIGENT MISREPRESENTATION

53. Cross-claimant realleges paragraphs 1-49 as if stated herein.

54. The cross-defendant, acting in a business capacity, breached a duty of care owed to the plaintiff.

55. The cross-claimant relied upon the misrepresentation of the defendant to its detriment.

56. The plaintiff justifiably relied upon the misrepresentation made by the defendant.

57. As a consequence of the defendant's misrepresentations, the plaintiff suffered actual pecuniary loss.

## COUNT V – INTERFERENCE W/ BUSINESS RELATIONS

58. Cross-claimant realleges paragraphs 1-54 as if stated herein.

59. A valid contractual relationship exists between cross-claimant and the plaintiff, Fidelity Guaranty & Insurance Co. ("Fidelity").

60. Cross-defendant had knowledge of the contractual relationship between the cross-claimant and Fidelity.

61. The cross-defendant's interference caused a breach or termination of the relationship or expectancy between the cross-claimant and Fidelity.

62. The cross-defendant's interference resulted in actual damages to the plaintiff.

63. As a consequence of the cross-defendant's action, the cross-plaintiff has incurred damages.

64. Wherefore, the cross-claimant, demands judgment against the cross-defendant for its full damages, plus interest, costs and attorneys' fees.

## COUNT VI – DEFAMATION

65. Cross-claimant realleges paragraphs 1-61 as if stated herein.

66. In their letter dated September 11, 2003 to Fidelity, the cross-defendant made defamatory statements against the cross-claimant.

67. The defamatory language identified the cross-claimant by name and was therefore of and concerning the cross-claimant.

68. The defamatory statements were made by the cross-defendant to a third party, specifically, Fidelity.

69. The cross-defendant's defamatory statements caused the cross-claimant to

EXHIBIT A                                        Pg. 1 of 2

work substituted for the work specified is of the same cost and quality, or that an equitable adjustment has been agreed upon between the contracting agency and the contractor and the amount in dollars of said adjustment; and (4) that the deviation is in the best interest of the contracting authority.

Such certificate shall be signed under the penalties of perjury and shall be a permanent part of the file record of the work contracted for.

Whoever violates any provision of this section willfully and with intent to defraud shall be punished by a fine of not more than five thousand dollars or by imprisonment for not more than six months, or both.

Section 39J. Notwithstanding any contrary provision of any contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public works by the commonwealth, or by any county, city, town, district, board, commission or other public body, when the amount of the contract is more than five thousand dollars in the case of the commonwealth and more than two thousand dollars in the case of any county, city, town, district, board, commission or other public body, a decision, by the contracting body or by any administrative board, official or agency, or by any architect or engineer, on a dispute, whether of fact or of law, arising under said contract shall not be final or conclusive if such decision is made in bad faith, fraudulently, capriciously, or arbitrarily is unsupported by substantial evidence, or is based upon error of law.

Section 39K. "Every contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building by the commonwealth, or by any county, city, town, district, board, commission or other public body, when the amount is more than five thousand dollars in the case of the commonwealth and more than two thousand dollars in the case of any county, city, town, district, board, commission or other public body, shall contain the following paragraph: - Within fifteen days (twenty-four days in the case of the commonwealth) after receipt from the contractor, at the place designated by the awarding authority if such a place is so designated, of a periodic estimate requesting payment of the amount due for the preceding month, the awarding authority will make a periodic payment to the contractor for the work performed during the preceding month and for the materials not incorporated in the work but delivered and suitably stored at the site (or at some location agreed upon in writing) to which the Contractor has title or to which a subcontractor has title and has authorized the contractor to transfer title to the awarding authority, less (1) a retention based on its estimate of the fair value of its claims against the contractor and less (2) a retention for direct payments to subcontractors based on demands for same in accordance with the provisions of section thirty-nine F, and less (3) a retention not exceeding five percent of the approved amount of the periodic payment. After the receipt of a periodic estimate requesting final payment and within sixty-five days after (a) the contractor fully completes the work or substantially completes the work so that the value of the work remaining to be done is, in the estimate of the awarding authority, less than one percent of the original contract price, or (b) the contractor substantially completes the work and the awarding authority takes possession for occupancy, whichever occurs first, the awarding authority shall pay the contractor the entire balance due on the contract less (1) a retention based on its estimate of the fair value of its claims against the contractor and of the cost of completing the incomplete and unsatisfactory items of work and less (2) a retention for direct payments to subcontractors based on demands for same in accordance with the provisions of section thirty-nine F, or based on the record of payments by the contractor to the subcontractors under this contract if such record of payment indicates that the contractor has not paid subcontractors as provided in section thirty-nine F. If the awarding authority fails to make payments as herein provided, there shall be

#2508 - Replacement Mains           Special Conditions
                                    00700-11

# EXHIBIT A

promptly given in writing by the awarding authority to anyone making a written request therefor, in either instance such writing to be prepared after reasonable investigation. Every such contract shall provide that an item equal to that named or described in the said specifications may be furnished; and an item shall be considered equal to the item so named or described if (1) it is at least equal in quality, durability, appearance, strength and design, (2) it will perform at least equally the function imposed by the general design for the public work being contracted for or the material being purchased, and (3) it conforms substantially, even with deviations, to the detailed requirements for the item in the said specifications. For each item of material the specifications shall provide for either a minimum of three named brands of material or a description of material which can be met by a minimum of three manufacturers or producers, and for the equal of any one of said named or described materials

Section 39N. Every contract subject to section forty-four A of the chapter one hundred and forty-nine or subject to section thirty-nine M chapter thirty shall contain the following paragraph in its entirety and an awarding authority may adopt reasonable rules or regulations in conformity with that paragraph concerning the filing, investigation and settlement of such claims.

If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions. A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered. Upon receipt of such a claim from a contractor, or upon its own initiative, the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly.

Section 39O. Every contract subject to the provisions of section thirty-nine M of this chapter or subject to section forty-four A of chapter one hundred forty-nine shall contain the following provisions (a) and (b) in their entirety and, in the event a suspension, delay, interruption or failure to act of the awarding authority increases the cost of performance to any subcontractor, that subcontractor shall have the same rights against the general contractor for payment for an increase in the cost of his performance as provisions (a) and (b) give the general contractor against the awarding authority, but nothing in provisions (a) and (b) shall in any way change, modify or alter any other rights which the general contractor or the subcontractor may have against each other.

(a) The awarding authority may order the general contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as it may determine to be appropriate for the convenience of the awarding authority; provided however, that if there is a suspension, delay or interruption for fifteen days or more or due to a failure of the awarding authority to act within the time specified in this contract, the awarding authority shall make an adjustment in the contract price for any increase in the cost of performance of this contract but shall not include any profit to the general contractor on such increase; and

EX HIBIT   B

# VOLTERRA, GOLDBERG, MANGIARATTI & JACOBS

LAW COUNSELLORS, INC.

THREE MILL STREET
ATTLEBORO, MASSACHUSETTS 02703

TELEPHONE (508) 222-1463
FACSIMILE (508) 226-7565

MAX VOLTERRA
JAMES GOLDBERG
ROBERT S. MANGIARATTI
SUSAN JACOBS

BRIAN J. WINNER

VIERI G. VOLTERRA
OF COUNSEL

August 6, 2003

<u>VIA FAX TO 781-792-2906</u>

Mark Patrick Greene, Esquire
BUTTERALL & GREEN, LLC
Jacobs House, Assinippi Village
2048 Washington Street
Hanover, MA  02339

Re: Seekonk Water District/Star Equipment Corporation

Dear Mr. Greene:

Pursuant to your request, I have scheduled a meeting in my office at Three Mill Street, Attleboro, Massachusetts on Friday, August 8, 2008 at noon for you and Jack Foran of Star Equipment Corp. to meet with representatives of the Seekonk Water District. In addition to myself, I expect the following persons to be in attendance for the District: Robert Fuller, Chairman, Bruce Baldwin, Superintendent, and David Jacobsen of Amory Engineers. I hope that we can have a candid and constructive discussion about all outstanding disagreements between Stat Equipment Corp. and the Seekonk Water District.

Please call my office to confirm your availability to attend the meeting.

Sincerely,

Robert S. Mangiaratti

RSM/jh
cc: Seekonk Water District
    Amory Engineers

# AFFIDAVIT

I, Attorney Mark Patrick Greene, am a partner in the law firm, Butterall & Greene, LLC, located at 2048 Washington Street, Hanover, Massachusetts.

On August 8, 2003, I attended a meeting with my client, Jack Foran of Star Equipment Corporation, at the law offices of Attorney Robert Mangiaratti in Attleboro, Massachusetts. Mr. Mangiaratti (counsel to the Town of Seekonk) arranged this meeting (See Exhibit A attached). In addition to Mr. Foran, Mr. Mangiaratti, and myself, several representatives of the Town of Seekonk attended this meeting.

The purpose of this meeting was to discuss outstanding disagreements between my client and the Town of Seekonk regarding site conditions on the work being performed by Star Equipment Corp. for the Town of Seekonk. My client believed that the site conditions encountered on the project warranted an increase in compensation. Officials of the Town of Seekonk had recently rejected my client's request for additional compensation.

At the meeting, both parties discussed the status of the job but were unable to resolve the matter. Eventually, Attorney Mangiaratti recommended that he and I excuse ourselves to privately discuss the relevant issues. Both Attorney Mangiaratti and I expressed our beliefs that the working relationship had deteriorated to the point that cooperation was in jeopardy. Attorney Mangiaratti suggested, and I concurred, that the two parties were not likely to come to a consensus on the issue of differing site conditions, nor on the appropriate amount of compensation.

Attorney Mangiaratti stated to me that he did not wish to litigate the dispute. He explained that "calling in" the performance bond was "messy" and not worth the trouble it would cause. Attorney Mangiaratti suggested, and I concurred, that the best course of action was to have the Town of Seekonk pay Mr. Foran for work completed and to dissolve the relationship between the two parties.

Attorney Mangiaratti and I returned to the meeting room at which point we explained our arrangement to the parties. All parties consented to the arrangement. No representative of Seekonk voiced any objection. In fact, Seekonk's representatives agreed to calculate exactly what Mr. Foran was owed for work performed. Mr. Mangiaratti assured me that this information would be forwarded to me "early next week."

EXHIBIT 1

As agreed, Mr. Foran ceased work on the project, and I awaited the documentation regarding payment and dissolution of the contract.

After two weeks, I still had not received the promised information. I called Mr. Mangiaratti who apologized for the delay and informed me that the numbers were still being calculated and that he would get them to me within the next couple of days.

Soonafter, Mr. Mangiaratti again assured me he would send the promised information. After further delay, Attorney Max Volterra (Mr. Mangiaratti's associate) telephoned me to assure me the numbers were forthcoming.

Finally, Attorney Volterra telephoned me to explain that the town was "calculating its damages." This position is in direct conflict with what the parties had agreed to on August 8, 2003.

At no point did I receive the promised information.

I solemnly swear, under penalties of perjury, that the statements made herein are true.

_____          12/12/03
Mark Greene                                                Date


### COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                          December 12, 2003
                                                                    Date

Subscribed and sworn to, under penalties of perjury, before me this 12th day of December, 2003.

_____
Notary Public: Joanne Butterall
My commission expires: December 31, 2004