UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY AND GUARANTY<br>INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>STAR EQUIPMENT CORPORATION,<br>CHARLENE B. FORAN, JOHN J. FORAN,<br>and TOWN OF SEEKONK,<br><br>       Defendants. | CIVIL ACTION NO. 1:04-CV-10250-EFH |

**MEMORANDUM OF LAW IN SUPPORT OF**
**FIDELITY AND GUARANTY INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

  The plaintiff, Fidelity and Guaranty Insurance Company ("F&G"), submits this Memorandum of Law in support of its Motion for Summary Judgment against the defendants, Star Equipment Corporation ("Star"), Charlene B. Foran and John J. Foran (hereinafter collectively referred to as the "Defendants" or "Indemnitors").  Pursuant to the express terms of the General Agreement of Indemnity ("the GAI") executed by the Indemnitors, the Indemnitors are required to reimburse F&G for all loss, costs, attorneys' fees, interest and expense of every kind or nature incurred by F&G in its investigation, evaluation, defense and/or discharge of claims made against surety bonds issued by F&G on behalf of Star, as principal.  Moreover, pursuant to the collateral security provision of the GAI and, independently, F&G's common law rights of *quia timet* and exoneration, F&G is entitled to an order requiring the Indemnitors to specifically perform their obligations and place F&G in funds sufficient to secure F&G against any future loss, cost or expense as F&G, in its sole and absolute discretion, deems necessary or

1

appropriate to protect it against claims or potential claims, including potential attorneys' fees and expenses.[1]

## I. UNDISPUTED MATERIAL FACTS

At all times relevant to this action, F&G has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects. See F&G's Statement of Material Facts in Support of its Motion for Summary Judgment ("F&G's Statement"), ¶1. At all times relevant to this action, Star Equipment Corp. ("Star") is or was in the business of construction contracting. (F&G's Statement, ¶2).

On or about June 28, 2002, Star, Charlene B. Foran and John J. Foran (hereinafter collectively referred to as "the Indemnitors") executed a General Agreement of Indemnity ("GAI") for the purpose of indemnifying F&G in connection with surety bonds issued by F&G on behalf of Star for certain construction projects. (F&G's Statement, ¶3).

The GIA provides that:

> the [Indemnitors] shall indemnify [F&G] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature . . . which [F&G] may sustain, incur or become liable for by reason of having executed or procured the execution of any Bond or Bonds, or by making any investigation of any matter concerning any Bond or Bonds, or by prosecuting or defending any action in connection with any Bond or Bonds, or by recovering any salvage or enforcing this Agreement.

(F&G's Statement, ¶4).

---

[1] F&G's exercise of its contractual and equitable right to be placed in funds by the Indemnitors with respect to Seekonk's claim should not be interpreted as a waiver or acknowledgment of the validity of Seekonk's claim on the Bond, which liability F&G expressly denies.

The GIA further provides that

> Upon [F&G's] reasonable belief that it may incur a loss on a Bond or Bonds, [F&G] may demand and, upon [F&G's] demand, the [Indemnitors] shall deliver over to [F&G] collateral security acceptable to [F&G] to cover any contingent losses and any subsequent increase thereof.

(F&G's Statement, ¶5).

On June 24, 2002, Star entered into a contract with Town of Seekonk, Massachusetts ("Seekonk") to perform work on the project known as "Installation of Replacement Watermains and Appurtenant Work, Contract No. 2003-W1," in Seekonk, Massachusetts ("the Project"). (F&G's Statement, ¶6). As a direct and proximate result of the Indemnitors executing the GAI, and in reliance thereon, F&G, as surety, executed a performance bond ("the Bond") at the request and on behalf of Star, as principal, for the benefit of the Seekonk, as obligee, for the Project. (F&G's Statement, ¶7).

By letter dated September 11, 2003, Seekonk gave notice to F&G that Star was in default of its contractual obligations and demanded that F&G perform its obligations under the Bond. Star responded to Seekonk and to F&G, denying that Star was in default of its contractual obligations. (F&G's Statement, ¶8). On or about February 5, 2004, F&G commenced this declaratory judgment action due to a controversy between Star and Seekonk as to whether these parties had mutually agreed to settle their dispute and, correspondingly, whether F&G has any liability on the Bond as a result. (F&G's Statement, ¶9).

F&G has received information and documentation from Seekonk wherein Seekonk estimates its additional costs to complete the project to be $179,963.00. (F&G's Statement, ¶10). Pursuant to Paragraph 5 of the GAI, F&G deems it necessary to require the Indemnitors to deposit cash collateral in the amount of $250,000.00 to protect it from exposure on Seekonk's claim, plus the attorneys' fees and expenses that have been and will be incurred by F&G in

3

defending against Seekonk's claim and enforcing the terms of the GAI, all of which is recoverable under the specific terms and conditions of the GAI. (F&G's Statement, ¶11).

To the extent required, the collateral will be utilized to cover F&G's potential losses and expenses under the Bond as contemplated by the GAI. Should any collateral remain after F&G's bond losses and expenses have been completely satisfied, those funds will be returned to the appropriate Indemnitor. (F&G's Statement, ¶12).

## II.    ARGUMENT

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505 (1986); Fed. R. Civ. P. 56(c). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. Anderson, 477 U.S. at 254, 106 S. Ct. 2505. A fact is material when it "might affect the outcome of the suit under the governing law." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id.

The movant has the initial burden of production, which it can meet either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the movant has met its burden, the non-moving party must "go beyond the pleadings, and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a material issue for trial." Id. at 323-324, 106 S. Ct. 2548 (internal quotation marks omitted).

4

### A.     F&G Is Entitled To Indemnification Pursuant To The GAI.

An express indemnity agreement between a surety and its indemnitors, like the one executed by the Indemnitors in this case, is to be interpreted "like any ordinary contract, with attention to language, background, and purpose." Speers v. H.P. Hood, Inc., 22 Mass. App. Ct. 598, 600 (1986). The Supreme Judicial Court of Massachusetts has specifically held, in construing similar indemnity agreements, that "[i]t is plain that the broad language of [the indemnity clause] manifests an intention to provide comprehensive protection to the [surety] for any losses which it might sustain because of its obligations on these surety bonds." Peerless Cas. Co. v. Marinucci Bros. & Co., 336 Mass. 691, 695 (1958) (emphasis added), citing Curtis v. Banker, 136 Mass. 355, 359 (1884) and Hartford Accident & Indemnity Company v. Casassa, 301 Mass. 246, 255 (1938).

It is well settled in Massachusetts and elsewhere that a surety is entitled to indemnification for payments made to discharge its principal's obligations. See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962); Admiral Drywall, Inc. v. Cullen, 56 F.3d 4, 5 (1st Cir. 1995). Massachusetts courts have specifically held that a surety seeking indemnification based on an indemnity agreement is entitled to judgment as a matter of law where (1) the defendants signed the indemnity agreement, (2) the surety incurred losses, and (3) the defendants have refused to indemnify the surety. See Hartford Acc. & Indemn. Co. v. Millis Roofing and Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999 (1981) (holding merit of surety's payments not material because surety averred that it settled claims based on good faith belief, and defendants had no evidence to contradict); American Employers' Ins. Co. v. Horton, 35 Mass. App. Ct. 921, 923-24 (1993) (holding defendants' expressions of belief in disagreement with surety's payments not sufficient to defeat summary judgment). Thus, absent a showing of bad faith on the part of

5

F&G, which the Indemnitors cannot show here, the Indemnitors are liable to reimburse F&G for its losses and expenses.

The obligation to reimburse a surety for its outlay extends to reimbursement of all legal and investigative fees incurred by the surety. See Peerless, 336 Mass. at 695 (surety entitled to reimbursement of fees incurred to investigate and remedy principal's default); Hartford Accident & Indemnity Co., 301 Mass. at 255 (same); see also Leventhal v. Krinsky, 325 Mass. 336, 341 (1950) (holding that reasonable attorneys' fees may be recovered where contract between parties provided for their payment).

It is undisputed that the Indemnitors signed the GAI, which provides that the Indemnitors, and each of them:

> shall indemnify [F&G] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature . . . which [F&G] may sustain, incur or become liable for by reason of having executed or procured the execution of any Bond or Bonds, or by making any investigation of any matter concerning any Bond or Bonds, or by prosecuting or defending any action in connection with any Bond or Bonds, or by recovering any salvage or enforcing this Agreement.

(F&G's Statement, ¶4).

Given the firmly established precedents of this Commonwealth, there is no doubt that F&G is entitled to summary judgment on its indemnification as a matter of law. See, e.g., Transamerica Premier Ins. Co. v. Electro Maintenance and Service Corp., 1994 WL 879652 (Mass. Super. 1994) (granting surety's motion for summary judgment where principal failed to show that fees were incurred in bad faith); Union Pacific Ins. Co. v. Caruso Development Co., Inc., 1994 WL 879823 (Mass. Super. 1994) (same).

6

B. **F&G Is Entitled To Summary Judgment And An Order Requiring The Indemnitors To Place F&G In Funds Pursuant To The Collateral Security Provision Of The GAI.**

Paragraph 5 of the GAI provides:

> Upon [F&G's] reasonable belief that it may incur a loss on a Bond or Bonds, [F&G] may demand and, upon [F&G's] demand, the [Indemnitors] shall deliver over to [F&G] collateral security acceptable to [F&G] to cover any contingent losses and any subsequent increase thereof."

(F&G's Statement, ¶5).

In interpreting collateral security provisions similar to Paragraph 5 of the GAI, courts have granted summary judgment on the issue of specific performance of the provision, based on the premise such remedy is required to protect the surety's bargain. See United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 588 (E.D. Pa. 1998); Marine Midland Trust Co. v. Alleghany Corp., 28 F. Supp. 680, 683-84 (S.D.N.Y.1939) ("if a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"). Courts have also upheld similar collateral security provisions and directed specific performance of the obligation in favor of a surety that had yet to suffer any damages or make any payments under its bond. See Ticor Title Ins. Co. v. Middle Street Office Tower A Associates, 768 F. Supp. 390, 391-392 (D. Me. 1991) (granting summary judgment on count seeking specific performance of contract " . . . as a remedy for breach of an indemnity agreement when it is in the nature of a collateral security agreement"). Court in other jurisdictions have not hesitated to award sureties in the position of F&G relief in the form of an order for specific performance of a collateral security obligation. See Feibus, 15 F. Supp. at 588; Eakin v. Continental Illinois National Bank and Trust Company of Chicago, 121 F.R.D. 363, 366 (N.D. Ill. 1988) (specific performance of collateral security obligation was available to liquidator for surety that had yet to suffer any damages or make any payments under its bond); Safeco Ins. Co. v. Criterion Inv.

7

Corp., 732 F. Supp. 834, 843 (E.D. Tenn. 1989) (surety was entitled to collateral security to protect it from prospective losses under litigation bond); Tennant v. United States Fid.& Guar. Co., 17 F.2d 38 (3d Cir. 1927); United Bonding Ins. Co. v. Stein, 273 F. Supp. 929 (E.D. Pa. 1967). Once a surety receives a demand on its bond, the principal must provide the surety with funds which the surety is to hold in reserve. See Feibus, 15 F. Supp. at 588; citing Safeco Ins. Co. of America v. Schwab, 739 F.2d 431, 433-434 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses"); American Motorists Ins. Co. v. Pennsylvania Beads Corp., 983 F. Supp. 437, 440 (S.D.N.Y.1997) (requiring deposit of collateral by indemnitors).

  F&G issued the Bond on behalf of Star in consideration of the Indemnitors execution of the GAI, in which they explicitly promised to collateralize F&G for any potential loss and expense. (F&G's Stmnt., ¶5). There is no dispute that such a claim has been made by Seekonk. (F&G's Stmnt., ¶8, 10). Based upon Seekonk's estimated costs to complete the project, F&G deems it necessary to require the deposit of cash collateral in the amount of $250,000.00 to protect it from exposure for Seekonk's claim, plus the attorneys' fees and expenses incurred by F&G in defending Seekonk's claim and in enforcing the terms of the GAI. (F&G's Stmnt., ¶11).

  Based on the express terms of the GAI, F&G is entitled to summary judgment on its claim for collateral security and an order from the Court specifically requiring the Indemnitors to place F&G in funds in the amount of $250,000.00.

**C.     Independent Of Its Rights Under The GIA, F&G Is Entitled To Summary Judgment And An Order Requiring The Indemnitors To Post Collateral Pursuant To F&G's Common Law Rights Of *Quia Timet* And Exoneration.**

Notwithstanding the contractual provisions of the GAI, F&G possesses the equitable rights of *quia timet* and exoneration. The equitable right of *quia timet* also allows a surety to demand that it be given funds sufficient to secure it against an anticipated but yet unknown liability. See Restatement (Third) of Suretyship and Guaranty §21; Matthews v. Matthews, 128 Me. 495, 499, 148 A. 796 (1930) ("The great weight of authority supports the proposition that a surety, after the debt for which he is liable has become due, without paying or being called on to pay it, may file a bill in equity in the nature of a bill *quia timet* to compel the principal debtor to exonerate him from liability by its payment") (citations omitted); Morley Construction Co. v. Maryland Casualty Co., 90 F.2d 976, 977-78 (8th Cir. 1937).

Similarly, F&G possesses the equitable right of exoneration which "gives a surety the equitable right to call upon the principal to exonerate him from liability by discharging the debt when it becomes due." Filner v. Shapiro, 633 F.2d 139, 142 (2d Cir. 1980). As Judge Learned Hand stated in a landmark 1936 decision, "before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal." Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2d Cir. 1936).

F&G remains exposed to the principal amount of the alleged claim by Seekonk, plus the attorneys' fees and expenses of F&G in continuing this litigation. Pursuant to F&G's common law rights of *quia timet* and exoneration, there can be no reasonable dispute that F&G's is entitled to funds sufficient to secure and collateralize it against the potential loss, cost, expense and attorneys' fees it may sustain in this lawsuit.

### III. CONCLUSION

For the forgoing reasons, Fidelity and Guaranty Insurance Company respectfully requests that its Motion for Summary Judgment be allowed and that this Honorable Court enter judgment in F&G's favor against the Indemnitors, jointly and severally, as follows:

(1) By entering an Order requiring the Indemnitors to reimburse F&G for the attorneys' fees and expenses incurred by F&G;

(2) By entering an Order requiring the Indemnitors to provide collateral security to F&G by immediately depositing funds in the amount of $250,000.00 with F&G;

(3) By entering an Order requiring the Indemnitors to exonerate, indemnify and keep indemnified F&G on an ongoing basis from liability for costs and attorneys' fees sustained and incurred by F&G as a result of having executed the Bond, and from such costs and attorneys' fees sustained or incurred by F&G in connection with the instant litigation, with interest; and

(4) By granting F&G such other and further relief that the Court deems just and proper.

Respectfully submitted,

**FIDELITY AND GUARANTY INSURANCE COMPANY,**

By its attorney,

/s/ Eric H. Loeffler
Bradford R. Carver, BBO #565396
Eric H. Loeffler, BBO #641289
Hinshaw & Culbertson LLP
One International Place, Third Floor
Boston, MA 02110
(617) 213-7000

Dated: October 31, 2005

34014991v1 856797