UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY AND GUARANTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>STAR EQUIPMENT CORPORATION, CHARLENE B. FORAN, JOHN J. FORAN, and TOWN OF SEEKONK,<br><br>    Defendants. | CIVIL ACTION NO. 1:04-CV-10250-EFH |

**FIDELITY AND GUARANTY INSURANCE COMPANY'S
STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff, Fidelity and Guaranty Insurance Company ("F&G"), pursuant to Local Rule 56.1 (D. Mass.), and identifies the following material facts of record as to which there is no genuine issue to be tried.

1.    At all times relevant to this action, F&G has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects. Affidavit of Kimberly D. Zanotta, (hereinafter, "Zanotta Aff."), ¶2.

2.    At all times relevant to this action, Star Equipment Corp. ("Star") is or was in the business of construction contracting. Zanotta Aff., ¶3.

3.    On or about June 28, 2002, Star, Charlene B. Foran and John J. Foran (hereinafter collectively referred to as "the Indemnitors") executed a General Agreement of Indemnity

1

("GAI") for the purpose of indemnifying F&G in connection with surety bonds issued by F&G on behalf of Star for certain construction projects.  Zanotta Aff., ¶4.

4. The GIA provides (¶4) that "the [Indemnitors] shall indemnify [F&G] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature . . . which [F&G] may sustain, incur or become liable for by reason of having executed or procured the execution of any Bond or Bonds, or by making any investigation of any matter concerning any Bond or Bonds, or by prosecuting or defending any action in connection with any Bond or Bonds, or by recovering any salvage or enforcing this Agreement."  Zanotta Aff., ¶5, Exhibit A.

5. The GIA provides (¶5) that "[u]pon [F&G's] reasonable belief that it may incur a loss on a Bond or Bonds, [F&G] may demand and, upon [F&G's] demand, the [Indemnitors] shall deliver over to [F&G] collateral security acceptable to [F&G] to cover any contingent losses and any subsequent increase thereof."  Zanotta Aff., ¶6, Exhibit A.

6. On June 24, 2002, Star entered into a contract with Town of Seekonk, Massachusetts ("Seekonk") to perform work on the project known as "Installation of Replacement Watermains and Appurtenant Work, Contract No. 2003-W1," in Seekonk, Massachusetts ("the Project").  Zanotta Aff., ¶7.

7. As a direct and proximate result of the Indemnitors executing the GAI, and in reliance thereon, F&G, as surety, executed a performance bond ("the Bond") at the request and on behalf of Star, as principal, for the benefit of the Seekonk, as obligee, for the Project.  Zanotta Aff., ¶8.

8.  By letter dated September 11, 2003, Seekonk gave notice to F&G that Star was in default of its contractual obligations and demanded that F&G perform its obligations under the Bond. Star responded to Seekonk and to F&G, denying that Star was in default of its contractual obligations. Zanotta Aff., ¶9.

9.  On or about February 5, 2004, F&G commenced this declaratory judgment action due to a controversy between Star and Seekonk as to whether these parties had mutually agreed to settle their dispute and, correspondingly, whether F&G has any liability on the Bond as a result. Zanotta Aff., ¶10.

10. F&G has received information and documentation from Seekonk wherein Seekonk estimates its additional costs to complete the project to be $179,963.00. Zanotta Aff., ¶11.

11. Pursuant to Paragraph 5 of the GAI, F&G deems it necessary to require the Indemnitors to deposit cash collateral in the amount of $250,000.00 to protect it from exposure on Seekonk's claim, plus the attorneys' fees and expenses that have been and will be incurred by F&G in defending against Seekonk's claim and enforcing the terms of the GAI, all of which is recoverable under the specific terms and conditions of the GAI.[1]  Zanotta Aff., ¶12.

12. To the extent required, the collateral will be utilized to cover F&G's potential losses and expenses under the Bond as contemplated by the GAI. Should any collateral remain after F&G's bond losses and expenses have been completely satisfied, those funds will be returned to the appropriate Indemnitor. Zanotta Aff., ¶13.

---

[1] F&G's exercise of its contractual and equitable right to be placed in funds by the Indemnitors with respect to Seekonk's claim should not be interpreted as a waiver or acknowledgment of the validity of Seekonk's claim on the Bond, which liability F&G expressly denies.

13. At all times relevant hereto, F&G has acted in good faith relative to its obligations as surety in the investigation and defense of Seekonk's claim on the Bond. Zanotta Aff., ¶14.

14. F&G has complied with all conditions precedent to maintaining this action. Zanotta Aff., ¶15.

                                                Respectfully submitted,

                                                **FIDELITY AND GUARANTY INSURANCE COMPANY,**

                                                By its attorney,

                                                /s/ Eric H. Loeffler
                                                Bradford R. Carver, BBO #565396
                                                Eric H. Loeffler, BBO #641289
                                                Hinshaw & Culbertson LLP
                                                One International Place, Third Floor
                                                Boston, MA 02110
Dated: October 31, 2005                    (617) 213-7000

34015061v1 856797