## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY AND GUARANTY<br>INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>STAR EQUIPMENT CORPORATION,<br>CHARLENE B. FORAN, JOHN J. FORAN,<br>and TOWN OF SEEKONK,<br><br>Defendants. | CIVIL ACTION NO. 1:04-CV-10250-EFH |

### FIDELITY AND GUARANTY INSURANCE COMPANY AND TOWN OF SEEKONK'S JOINT MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF THEIR JOINT MOTION TO ENFORCE SETTLEMENT AGREEMENT

The plaintiff, Fidelity and Guaranty Insurance Company ("F&G" or "Fidelity"), and the defendant, Town of Seekonk, Seekonk Water District ("Seekonk") hereby respectfully move this Honorable Court to reconsider its Order denying F&G and Seekonk's Joint Motion to Enforce Settlement Agreement, which sought to enforce a written settlement agreement executed by the parties in this case and their attorneys on March 4, 2006, following a mediation at the court with ADR Panel Member Scott A. Birnbaum, Esq.

### BACKGROUND

**A.     Case Background**

On June 24, 2002, Star Equipment Corporation ("Star") entered into a contract with Seekonk to perform work on the project known as "Installation of Replacement Watermains and Appurtenant Work, Contract No. 2003-W1," in Seekonk, Massachusetts ( "the Project"). As a direct and proximate result of the defendants, Star, Charlene Foran and John Foran (collectively referred to as "the Indemnitors") executing a General Agreement of Indemnity, and in reliance

1

thereon, F&G, as surety, executed a performance bond ("the Bond") at the request and on behalf

of Star, as principal, for the benefit of the Seekonk, as obligee, for the Project. Disputes arose on

the Project, and Seekonk gave notice to F&G that Star was in default of its contractual

obligations and demanded that F&G perform its obligations under the Bond. Star responded to

Seekonk and to F&G, denying that Star was in default of its contractual obligations.

On or about February 5, 2004, F&G commenced this declaratory judgment action due to

a controversy between Star and Seekonk as to whether these parties had mutually agreed to settle

their dispute and, correspondingly, whether F&G has any liability on the Bond as a result.

Seekonk filed a cross-claim against Star for breach of contract. Star and the Forans, in turn, filed

cross-claims against Seekonk for breach of contract, intentional and negligent misrepresentation,

interference with business relations and defamation.

**B.     The March 4, 2006 Mediation**

The parties agreed to submit the case to mediation through this Court's ADR program

and agreed to use Scott A. Birnbaum, Esq., an ADR Panel member, as a mediator. The mediation

was scheduled for March 4, 2006. All parties, their representatives and counsel appeared at the

mediation.

The parties eventually came to an agreement. The parties, their representatives and their

counsel signed and executed a document entitled "Settlement Memorandum of Understanding"

("Settlement Memorandum"). A true and correct copy of the Settlement Memorandum is

attached hereto as Exhibit A. The Settlement Memorandum, written by the mediator, provides,

in full:

2

**Settlement Memorandum of Understanding**

1.     Fidelity and Guaranty Ins. Co. ("Fidelity") will pay to the Seekonk Water District/Town of Seekonk, Mass., the sum of Fifty Thousand dollars ($50,000.00);

2.     The parties hereto agree to Release all claims asserted in the action entitled Fidelity & Guaranty Ins. Co. v. Star Equipment Corp., et al., #1:04-cv-10250-EFH (D. Mass.) except that Star, Charlene Foran & John Foran and Fidelity do not release claims & defenses they have against each other.

3.     This settlement is conditioned upon:

      (a)     Approval by appropriate municipal authorities; and

      (b)     Execution of customary releases and settlement agreement.

See Exhibit A.  Again, the Settlement Memorandum is executed by all parties, their counsel and the mediator.

Following the March 4, 2006 mediation, Star and the Forans refused to abide by the terms of the agreement.  On July 28, 2006, Seekonk and F&G filed a Joint Motion to Enforce Settlement Agreement, which the Court denied without explanation on August 9, 2006.  F&G and Seekonk respectfully request that the Court reconsider its decision in light of the express terms of the Settlement Memorandum and well-established case law concerning the enforcement of settlement agreements.

**ARGUMENT**

**A.**     **Resolution Of The Indemnity Claim Was Not A Condition Subsequent To The Indemnitors Executing A More Formal Release And Settlement Agreement.**

In responding to F&G and Seekonk's Joint Motion to Enforce, the Indemnitors argued that "among the matters that remained to be worked out after the mediation, but before the execution of a settlement agreement, was the dispute between Fidelity in its capacity as surety, and the Forans." This argument belies the express language of the Settlement Memorandum, which specifically provides that the indemnity claim was the only claim that was not settled, and was specifically reserved by F&G and the Indemnitors. All of the other claims in the action were settled and agreed upon by the parties as set forth in the Settlement Memorandum. Had the Indemnitors intended to condition the entire settlement of the case on resolution of the indemnity claim, which they did not, they could have provided for such in the terms of the Settlement Memorandum.

Courts have long recognized the prudential policy favoring settlement as a preferred alternative to costly, time-consuming litigation. See Mathewson v. Allied Marine Industries, Inc., 827 F.2d 850, 852 (1st Cir. 1987). As such, a negotiated settlement is a most solemn undertaking in the eyes of the courts. Id. On this basis, the courts retain an inherent power to supervise and enforce settlement agreements entered into by parties. Id. Whereas garden-variety contract negotiations implicate the interest of the contracting parties, settlement negotiations which take place in the context of ongoing litigation implicate the courts as well. Id. There is an institutional interest in the solemnity of such agreements, in bringing certainty to the process, and in minimizing the opportunities for lawyers and litigants alike to act as Monday morning quarterbacks. Id.

4

The policy of favoring settlement agreements as a means of avoiding costly and time consuming litigation would scarcely be furthered by leaving a party without recourse when the other party fails to perform according to the terms of the agreement. See Dankese v. Defense Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982) citing Warner v. Rossignol, 513 F.2d 678 (1st Cir. 1975). It is well established, therefore, that a trial court retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court. Dankese, 693 F.2d at 16. Summary enforcement of arm's length settlements is considered a useful device to hold parties to their word. Malave v. Carney Hospital, 170 F.3d 217, 222 (1st Cir. 1999).

As set forth above, Star and the Forans, sophisticated parties with the benefit and advice of counsel, entered into an agreement to settle all but the indemnity claims and defenses. The settlement was the product of hours of direct negotiation between the parties and their counsel, through the Court's ADR program, following which the parties drafted and executed the Settlement Memorandum. It was not until discussions ensued between F&G and the Indemnitors regarding the remaining indemnity claim that the Indemnitors began to have a change of heart, and completely reversed their well-documented position regarding the settlement of the underlying claims. The Indemnitors conduct in this regard is the height of "Monday morning quarterbacking" that the First Circuit condemned in Mathewson, supra. On this basis, and in the interest of the solemnity of settlement agreements, F&G and Seekonk respectfully request that the Court reconsider its denial and invoke its inherent authority to enforce the settlement reached at the mediation.

**B.**    **The Settlement Memorandum Is Binding And Enforceable, And The Parties Agreed to Settle Everything Except The Indemnity Claims And Defenses.**

It is conventional for courts to enforce settlement agreements, assuming the agreement is valid and not against public policy. See Quint v. A.E. Staley Mfg. Co., 246 F.3d 11 (1st Cir. 2001). Such agreements are binding and enforceable even when they require further documentation or negotiation or are contingent on future events, so long as they provide mechanisms to narrow present uncertainties to rights and obligations. See LaFayette Place Assoc. v. Boston Redevelopment Auth., 427 Mass. 509, 518 n. 9 (1998). These agreements are commonly viewed as voluntary surrenders of the right to have one's day in court. See Bandera v. City of Quincy, 344 F.3d 47 (1st Cir. 2003).

Where parties have merely reached a stage of "imperfect negotiation" prior to formalizing a contract, and have yet to reduce their agreement to terms, there is no obligation imposed on the parties. Lafayette at 517; See also Rosenfield v. United States Trust Co., 290 Mass. 210 (1935) (stating that "to be bound, the parties must have progressed beyond the stage of imperfect negotiation.") However, as is the case here, when parties have progressed beyond the stage of imperfect negotiation, a contract should be interpreted so as to make it an enforceable undertaking rather than one of no force and effect. Lafayette, 427 Mass. at 517.

The Indemnitors unequivocally agreed to settle their claims against Seekonk under the terms of the Settlement Memorandum. The settlement was memorialized and executed by the Indemnitors, which the benefit of counsel. The Settlement Memorandum contained a reservation of rights between F&G and the Indemnitors concerning indemnity. The Indemnitors now inexplicably maintain that F&G's waiver of its indemnity claim was a contingency underlying the original settlement reached at the mediation. There is simply nothing in the Settlement Agreement which conditions the settlement upon resolution of the indemnity claims. On the contrary, the clear language of the Settlement Memorandum carves out and reserves the

indemnity claims, evidencing that resolution of the indemnity claim was not a condition to settlement.

**C.    There Is No Need For A Further Formal Settlement Agreement Or Release For The Court To Enforce The Settlement.**

A binding settlement agreement can be reached without the need for a writing. See Hubbard v. C.A. Peairs, 24 Mass. App. Ct. 372, 377 (1987). In this regard, verbal settlement agreements are routinely held effective despite the fact that a party thereafter reneges and refuses to execute a written instrument. See Dominick v. Dominick, 18 Mass. App. Ct. 85 (1984); Carver v. Waldman, 21 Mass. App. Ct. 958 (1986). Moreover, settlements to be performed within one (1) year are not subject to the Statute of Frauds (G.L. c. 259, § 1). Id. Only an unconditional "yes," and not a party's signature on settlement papers, is required to make a settlement offer binding. See Thomas v. Massachusetts Bay Transportation Authority, 39 Mass. App. Ct. 537 (1995).

Consistent with the foregoing, the fact that the parties did not immediately execute a written agreement confirming the settlement does not erode the binding nature of that settlement in any manner. See Wang Laboratories, Inc. v. Applied Computed Sciences, Inc. 741 F.Supp. 992 (D.Mass. 1990) (fact that settlement agreement was not reduced to writing does not bar enforcement when parties reported to court that claim was settled). It is sufficient for purposes of enforcing the settlement that the parties reached a "meeting of the minds." See Malek v. Verizon Communications, Inc. 2004 WL 189251 (D. Mass.) (formation of a settlement agreement, like any other contract, requires a bargain in which there is a manifestation of mutual assent, *i.e.* a meeting of the minds to the exchange and consideration). In fact, the only reason a "customary release and settlement agreement" was not executed was because of the Indemnitors' refusal and unwillingness to sign off.

7

As set forth above, the parties reached a "meeting of the minds" on March 4, 2006. The absence of an executed typewritten release is the solely the result of the Indemnitors refusal to sign such a release. Counsel for F&G forwarded a type-written release to counsel for the Indemnitors and they did not request any substantive changes to the material terms of the release. In fact, counsel for the Indemnitors reviewed the Release and submitted only a minor change. Star and the Forans cannot claim that the conditions to the settlement agreement have not been met as they are the ones preventing the happening of the condition. The Indemnitors are not entitled to seek shelter behind their own unwillingness to execute a settlement agreement as justification for withdrawing from a settlement reached and memorialized in the Settlement Memorandum. The terms of the settlement are sufficiently clear for enforcement, even absent an executed settlement agreement.

## CONCLUSION

For the foregoing reasons, F&G and Seekonk respectfully request that this Honorable Court reconsider its denial of their Joint Motion to Enforce Settlement Agreement and issue the following orders:

1.    Dismissal with prejudice of all claims and/ or cross claims between and among Town of Seekonk/Seekonk Water District, Charlene B. Foran, John J. Foran and Star Equipment Corporation; and

2.    Dismissal with prejudice of all claims and/ or counterclaims between Fidelity Guaranty & Insurance Company and Town of Seekonk/ Seekonk Water District upon the payment of Fifty Thousand ($50,000.00) Dollars by Fidelity to Seekonk.

## REQUEST FOR HEARING

F&G and Seekonk respectfully request oral argument on this Motion.

Respectfully submitted,

**FIDELITY AND GUARANTY INSURANCE COMPANY,**

By its attorney,

/s/ Eric H. Loeffler
Bradford R. Carver, BBO #565396
Eric H. Loeffler, BBO #641289
Hinshaw & Culbertson LLP
One International Place, Third Floor
Boston, MA 02110
(617) 213-7000

and

**TOWN OF SEEKONK/SEEKONK WATER DISTRICT,**

By its attorneys,

/s/ Andrew S. Brooslin
Andrew S. Brooslin, BBO No.: 638238
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: November 3, 2006

## CERTIFICATE OF SERVICE

I, Eric H. Loeffler, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 3, 2006.

/s/ Eric H. Loeffler
Eric H. Loeffler, BBO #641289

34025337v1 856797