# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FIDELITY AND GUARANTY
INSURANCE COMPANY,

        Plaintiff,

v.

STAR EQUIPMENT CORPORATION,
CHARLENE B. FORAN, JOHN J. FORAN,
and TOWN OF SEEKONK,

        Defendants.

CIVIL ACTION NO. 1:04-CV-10250-EFH

## AFFIDAVIT OF TIMOTHY G. SNYDER

I, Timothy G. Snyder, having been duly sworn, hereby depose and state as follows:

1.      I am employed by Travelers and I have full authority to manage, defend and prosecute claims on behalf of Fidelity and Guaranty Insurance Company ("F&G") in this lawsuit. I make the statements that follow on personal knowledge or on the basis of the business records of F&G, of which I am the keeper. These records were prepared, processed and maintained in the ordinary course of business, and it is the regular practice of F&G to prepare, process and maintain such records.

2.      At all times relevant to this action, F&G has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

3.      At all times relevant to this action, Star Equipment Corp. ("Star") is or was in the business of construction contracting.

1

4.    On or about June 28, 2002, Star, Charlene B. Foran and John J. Foran (hereinafter collectively referred to as "the Indemnitors") executed a General Agreement of Indemnity ("GAI") for the purpose of indemnifying F&G in connection with surety bonds issued by F&G on behalf of Star for certain construction projects. A true and correct copy of the GAI is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

5.    The GAI provides (¶4) that "the [Indemnitors] shall indemnify [F&G] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature . . . which [F&G] may sustain, incur or become liable for by reason of having executed or procured the execution of any Bond or Bonds, or by making any investigation of any matter concerning any Bond or Bonds, or by prosecuting or defending any action in connection with any Bond or Bonds, or by recovering any salvage or enforcing this Agreement."

6.    The GAI provides (¶7) that F&G "may settle or compromise any claim, liability, demand, suit or judgment upon any Bond or Bonds executed or procured by it, and any such settlement or compromise shall be binding upon the [Indemnitors]."

7.    The GAI provides (¶7) that "[v]ouchers or other evidence or payments made by [F&G] shall be *prima facie* evidence of the fact and amount of the liability of the [Indemnitors] to [F&G]."

8.    On June 24, 2002, Star entered into a contract with the Town of Seekonk, Massachusetts ("Seekonk") to perform work on the project known as "Installation of Replacement Watermains and Appurtenant Work, Contract No. 2003-W1," in Seekonk, Massachusetts ("the Project").

2

9.    As a direct and proximate result of the Indemnitors executing the GAI, and in reliance thereon, F&G, as surety, executed a Performance Bond ("the Performance Bond") and a Labor and Materials payment bond ("the Payment Bond") at the request and on behalf of Star, as principal, for the benefit of the Seekonk, as obligee, for the Project. A true and correct copy of the Bonds are attached hereto as Exhibit B.

10.    By letter dated September 11, 2003, Seekonk gave notice to F&G that Star was in default of its contractual obligations and demanded that F&G perform its obligations under the Performance Bond. Star responded to Seekonk and to F&G, denying that Star was in default of its contractual obligations.

11.    On or about February 5, 2004, F&G commenced this declaratory judgment action due to a controversy between Star and Seekonk as to whether these parties had mutually agreed to settle their dispute and, correspondingly, whether F&G has any liability on the Bond as a result. F&G also asserted claims against the Indemnitors for breach of the GAI.

12.    The parties subsequently agreed to submit the case to mediation through the Court's ADR program which occurred on March 4, 2006. All parties, their representatives and counsel appeared at the mediation.

13.    The parties came to an agreement and the parties, their representatives and their counsel signed and executed a document entitled "Settlement Memorandum of Understanding" ("Settlement Memorandum"). A true and correct copy of the Settlement Memorandum is attached hereto as Exhibit C. The Settlement Memorandum provides:

3

## Settlement Memorandum of Understanding

1.     Fidelity and Guaranty Ins. Co. ("Fidelity") will pay to the Seekonk Water District/Town of Seekonk, Mass., the sum of Fifty Thousand dollars ($50,000.00);

2.     The parties hereto agree to Release all claims asserted in the action entitled Fidelity & Guaranty Ins. Co. v. Star Equipment Corp., et al., #1:04-cv-10250-EFH (D. Mass.) except that Star, Charlene Foran & John Foran and Fidelity do not release claims & defenses they have against each other.

3.     This settlement is conditioned upon:

    (a)     Approval by appropriate municipal authorities; and

    (b)     Execution of customary releases and settlement agreement.

See Exhibit C.  The Settlement Memorandum was executed by all parties, their counsel and the mediator.

14.     The Indemnitors subsequently refused to abide by the terms of the agreement.

15.     On July 28, 2006, Seekonk and F&G filed a Joint Motion to Enforce Settlement Agreement, which the Court denied without a hearing on August 9, 2006.

16.     On November 3, 2006, F&G and Seekonk filed a Joint Motion requesting that the Court reconsider its decision in light of the express terms of the Settlement Memorandum and well-established case law concerning the enforcement of settlement agreements.

17.     On November 28, 2006, the Court held a hearing on the Joint Motion for reconsideration and, on November 29, 2006, the Court entered an Order allowing the Motion. Pursuant to the November 29, 2006 Order, the Court also enforced the settlement agreement.  A true and correct copy of the Court's November 29, 2006 Order is attached hereto as Exhibit D.

34028072v1 856797

18.     Following the approval of the settlement, on or about January 19, 2007, F&G paid Seekonk $50,000.00 pursuant to the terms of the settlement agreement. A true and correct copy of the January 19, 2007 transmittal letter and check are attached hereto as Exhibit E.

19.     F&G also received a claim from Public Works Supply Company ("PWS") on the Payment Bond issued with respect to the Project. On or about February 24, 2004, F&G, in good faith and pursuant to its obligations as surety, investigated and ultimately resolved the PWS claim by making a payment to PWS in the amount of $24,229.05.

20.     As result of the forgoing, F&G has sustained losses in the form of payments to bond claimants (Seekonk and PWS) in the amount of $74,229.05.

21.     F&G has also incurred attorneys' fees and expenses in the amount of $36,657.50 in the investigation, defense and resolution of claims made on the Bonds, and in enforcing the terms of the GAI in this action, all of which are recoverable under the specific terms of the GAI.

22.     Thus, F&G has incurred a total loss in the amount of at least $110,886.55, and anticipates incurring additional attorneys' fees and expenses in further prosecution of this action.

23.     The Indemnitors have not reimbursed F&G for these losses, costs and expenses in violation of the express terms of the GAI.

24.     At all times relevant hereto, F&G has acted in good faith.

25.     F&G has complied with all conditions precedent to maintaining this action.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 12th DAY OF FEBRUARY, 2007.

/s/ Timothy G. Snyder
Timothy G. Snyder
Bond Salvage Manager
Travelers

5

# EXHIBIT A

# StPaul Surety

## GENERAL AGREEMENT OF INDEMNITY

WHEREAS, STAR EQUIPMENT CORP., CHARLENE B. FORAN AND JOHN J. FORAN, JR. (hereinafter collectively called the UNDERSIGNED) may from time to time request St. Paul Fire and Marine Insurance Company and/or Seaboard Surety Company and/or St. Paul Guardian Insurance Company and/or St. Paul Mercury Insurance Company and/or United States Fidelity and Guaranty Company and/or Fidelity and Guaranty Insurance Underwriters, Inc. and/or Fidelity and Guaranty Insurance Company and/or any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and/or reinsurers (hereinafter collectively called SURETY) to execute as surety or guarantor, or procure the execution of, certain surety bonds, undertakings, guaranties, stipulations or other obligatory agreements (all such agreements being hereinafter referred to as BOND or BONDS); and

WHEREAS, the UNDERSIGNED by executing this Agreement represent that they have a material and beneficial interest in the obtaining of such BONDS by each of the CONTRACTORS.

NOW, THEREFORE, in consideration of the execution of any one or more such BONDS, the UNDERSIGNED, for themselves, their respective personal representatives, successors and assigns, jointly and severally, covenant and agree, with respect to all BONDS heretofore or hereafter executed for the CONTRACTOR, that:

1. This Agreement binds each UNDERSIGNED to SURETY with respect to all BONDS executed or procured for any UNDERSIGNED executing this Agreement and for any CONTRACTOR as defined below. If any BOND or BONDS shall be executed or procured for any Joint Venture to which any CONTRACTOR is or may become a party, the liability and obligations of the UNDERSIGNED to SURETY shall be the same as if such BOND or BONDS had been executed for the CONTRACTOR acting alone, notwithstanding any agreement between or among the Joint Venturers. CONTRACTOR as used in this Agreement shall mean: any UNDERSIGNED; any partnership, association, corporation, successor, assign, affiliate, any related entity, subsidiary and/or division of the UNDERSIGNED, whether now existing or hereafter formed or acquired; and any other person who obtains BONDS from SURETY at the request of any UNDERSIGNED. BONDS as used in this Agreement shall include any BOND or BONDS written for the CONTRACTOR operating under its legal name or any fictitious, assumed or trade name.

2. If SURETY executes or procures execution of a Bid or Proposal BOND or Consent of Surety to the issuance of BONDS, it may decline to execute or procure execution of any BONDS required in connection with any award made under the proposal for which such Bid or Proposal BOND or Consent of Surety to the issuance of BONDS is given; and such declination shall not diminish or alter the liability of the UNDERSIGNED with respect to such Bid or Proposal BOND or Consent of Surety.

3. This Agreement shall apply to any and all BONDS requested by the CONTRACTOR, whether such BONDS were executed prior to, on or after the date of this Agreement; and, further, this Agreement shall apply to any and all BONDS executed, or the execution of which has been procured, by SURETY for any CONTRACTOR, whether or not there shall be any written application therefor executed by one or more of the UNDERSIGNED.

4. The UNDERSIGNED shall indemnify SURETY and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which SURETY may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement. In the event SURETY advances funds for the benefit of any CONTRACTOR in connection with work subject to a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT) and/or for the discharge of obligations incurred in connection with a BONDED CONTRACT, such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR.

5. Upon SURETY's reasonable belief that it may incur a loss on a BOND or BONDS, SURETY may demand and, upon SURETY's demand, the UNDERSIGNED shall deliver over to SURETY collateral security acceptable to SURETY to cover any contingent losses and any subsequent increase thereof. SURETY shall return to

the UNDERSIGNED any unused portion of collateral upon termination of the liability of SURETY on all BONDS and satisfaction by the UNDERSIGNED of its obligations to SURETY under this Agreement.

6.(a)  All payments received for or on account of a BONDED CONTRACT, and all monies due and to become due under any such contract or contracts, whether in the possession of the CONTRACTOR or otherwise, are trust funds for the benefit and payment of all persons to whom the CONTRACTOR incurs obligations in the performance of such contract or contracts for which SURETY would be liable under any BOND or BONDS. If SURETY discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds. CONTRACTOR shall, upon demand of SURETY and in implementation of the trust hereby created, open an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for deposit of such trust funds, and shall deposit therein all monies received pursuant to such contract. Withdrawals from such account shall be by check or similar instrument signed by the CONTRACTOR and countersigned by a representative of SURETY.  Said trust or trusts shall terminate on the payment by the CONTRACTOR of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur.

(b)  CONTRACTOR agrees and hereby expressly declares that title to all materials and supplies specially ordered or fabricated for any BONDED CONTRACT shall be held in trust for the benefit of the owner of the improvement being constructed or SURETY, as their interests may appear, and that possession of such material shall be subject to the direction of such owner and SURETY.

7.   SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED.  Vouchers or other evidence of payments made by SURETY shall be *prima facie* evidence of the fact and amount of the liability of the UNDERSIGNED to SURETY.

8.   In the event SURETY exercises an option or right to terminate any BOND, and such termination causes a claim on or a forfeiture of such BOND due to the UNDERSIGNED's failure to satisfy its obligations, under the BOND or otherwise, to replace the BOND, the UNDERSIGNED's indemnity obligations to SURETY under this Agreement are not amended or modified.  The UNDERSIGNED hereby agree that they shall not allege or assert any claim or defense against SURETY that such BOND termination and/or claim payment on such terminated BOND was unnecessary, unreasonable, made in bad faith, not required, or otherwise inappropriate or not permissible.

9.(a)   The UNDERSIGNED shall furnish to SURETY such information as it may request concerning their financial condition, the status of work under any contract, bonded or unbonded, the condition of the performance of any such contract, and the payment of obligations incurred in connection therewith, and the UNDERSIGNED hereby authorize those with whom such contracts are made to furnish to SURETY all information concerning such contracts and the work thereunder.   SURETY may from time to time, in its sole discretion, examine and copy the books, accounts, and records of the UNDERSIGNED and inspect the work at any project (whether bonded or unbonded).

(b)   Upon request of SURETY, the UNDERSIGNED shall provide reports to SURETY regarding all construction or service contracts (whether bonded or unbonded) in such detail and in such format as may be reasonably requested by SURETY.  Each UNDERSIGNED represents, warrants, and covenants that all information provided in, or in connection with, any application for any BOND or BONDS, or in connection with this Agreement, is complete and accurate.  SURETY may obtain information concerning the affairs and operations of the UNDERSIGNED and any transaction between or among them from any banks, depositories, obligees of the BOND or BONDS, materialmen, supply houses, credit reporting agencies and any other person.  Each UNDERSIGNED represents and warrants that any financial statement submitted by or on its behalf to SURETY, whether prior to the date of the Agreement or in the future, is complete and correct and fairly presents the financial condition of such UNDERSIGNED as of the date of such financial statement and the results of the operations of such UNDERSIGNED for the periods covered by such statements, all in accordance with generally accepted accounting principles consistently applied.

10.(a) The UNDERSIGNED hereby grant to SURETY a security interest in, and acknowledge and agree that SURETY has, and shall continue to have, a continuing security interest in any and all of the UNDERSIGNED's:

(i)  Receivables, whether now existing or hereafter arising, however evidenced or acquired, and whether the UNDERSIGNED now has or hereafter acquires any rights therein.  (RECEIVABLES means and includes accounts, accounts receivable, contract rights (including bonded and unbonded contracts), instruments, securities, investment property, notes, drafts, acceptances, documents, leases, chattel paper, deposit accounts, letters of credit, letter-of-credit rights, general intangibles, patents, copyrights, trademarks, tradenames,

licenses, franchises, goodwill, judgments, awards, choses in action, causes of action (whether in contract, tort or otherwise), tax refunds and all other forms of obligations owing to the UNDERSIGNED, and all of the UNDERSIGNED's rights to any merchandise, including (without limitation) any returned or repossessed goods and the right of stoppage in transit which is represented thereby);

(ii) Inventory, whether now owned or hereafter acquired and wherever located, and all documents of title at any time evidencing or representing any part thereof. (INVENTORY means and includes all goods which are leased by UNDERSIGNED as lessor, are held for sale or lease, or are furnished or to be furnished by the UNDERSIGNED under contracts of service, or which are raw materials, work-in-process, finished goods, materials or supplies of any nature used or usable in connection with the manufacture, processing, demonstrations, promotion, supply, servicing, storing, packing, shipping, advertising, selling, leasing or furnishing of such goods or any constituents or ingredients thereof, and returned or repossessed goods);

(iii) Equipment, whether now owned or hereafter acquired and wherever located. (EQUIPMENT means and includes equipment, machinery, tools, trade fixtures, furniture, furnishings, office equipment, leasehold improvements and motor vehicles and all goods for use in the UNDERSIGNED's business, together with all parts, equipment, accessories and attachments relating to any of the foregoing);

(iv) Records, including supporting evidence and documents relating to any of the above-described property, including, without limitation, written applications, credit information, account cards, payment records, correspondence, delivery and installation certificates, invoice copies, delivery receipts, notes and other evidences of indebtedness, insurance policies and certificates and the like, together with all books of account, ledgers, cabinets and safe deposit boxes in which the same are reflected or maintained, whether now existing or hereafter arising and wherever located;

(v) Accessions and Additions to, and substitutions and replacements of, any and all of the foregoing, whether now existing or hereafter arising or attaching;

(vi) Proceeds and Products of the foregoing, all insurance of the foregoing, and all proceeds thereof, whether now existing or hereafter arising; and

(vii) All Subcontracts, (whether bonded or unbonded) and all Surety Bonds securing the performance of, or the discharge of obligations incurred in connection with, such subcontracts,

all of the foregoing collectively referred to as the COLLATERAL.

(b) The UNDERSIGNED represent and warrant that, except as otherwise disclosed to SURETY in writing: (i) the principal place of business and chief executive office of each UNDERSIGNED and the office where each UNDERSIGNED keeps its records concerning the COLLATERAL, and all originals of all chattel paper which evidence the COLLATERAL are located at the address set forth below the signature of each such UNDERSIGNED; (ii) the UNDERSIGNED have exclusive possession and control of the equipment; and (iii) the tax identification number and name of each UNDERSIGNED set forth in the signature pages hereof are complete and correct.

(c) The UNDERSIGNED shall notify SURETY at least 60 days in advance of any change in any UNDERSIGNED's name, tax identification number, principal place of business, chief executive office or the office where it keeps its records concerning the COLLATERAL and all originals of all documents, instruments and chattel paper which evidence COLLATERAL. The UNDERSIGNED shall hold and preserve such records, documents, instruments, and chattel paper and will permit representatives of SURETY at any time during normal business hours to inspect and make abstracts from such records, documents, instruments, and chattel paper.

(d) Without SURETY's prior written consent, which shall not be unreasonably withheld, the UNDERSIGNED shall not, nor permit any of their subsidiaries to: (i) sell, assign by operation of law or otherwise, or otherwise dispose of any of the assets (whether or not constituting COLLATERAL) of their respective businesses, including but not limited to shares representing stock in their respective businesses and subsidiaries, either in whole or in part, or any interest therein except in the ordinary course of business or (ii) merge or consolidate with any other company, including any other company directly or indirectly controlled by, controlling or under common control with the UNDERSIGNED.

11. This Agreement constitutes both a security agreement to SURETY and also a financing statement, in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of this Agreement shall be solely at the option of SURETY, and may be filed by SURETY without in any way subrogating, restricting or limiting the rights of SURETY under this Agreement, under law or in equity. The failure to file this Agreement shall not release or excuse any of the obligations of the CONTRACTOR or the UNDERSIGNED under this Agreement. SURETY is authorized to prepare and file financing statements and amendments thereto in any filing office in any Uniform Commercial Code jurisdiction consistent with security interests granted under this Agreement.

12. In addition to the security interest granted hereunder, the UNDERSIGNED hereby assign, transfer, and convey to SURETY all of the rights and property that constitute the COLLATERAL. The assignment is for the purpose of enabling SURETY to take immediate possession of and to use any COLLATERAL upon the happening of an EVENT OF DEFAULT to complete the performance of the obligations of the UNDERSIGNED under a BONDED CONTRACT and to make payment of obligations incurred by the UNDERSIGNED in the performance of a BONDED CONTRACT. The assignment is an absolute assignment of COLLATERAL relating to each BONDED CONTRACT and no further notice or other action by SURETY is required. The possession and use, for the purposes set forth in this Section 12, of any assets assigned to SURETY shall not be deemed to be a foreclosure or a retention in lieu of foreclosure under the security interest granted to SURETY in Section 10 of this Agreement.

13. The following, or any of them, shall constitute an EVENT OF DEFAULT hereunder:

(a) the CONTRACTOR is declared to be in default in the performance of a contract (whether bonded or unbonded);

(b) the UNDERSIGNED shall breach any terms of this Agreement;

(c) the UNDERSIGNED files a petition in voluntary bankruptcy or seeking relief under any provision of any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against it under any such law;

(d) a receiver, liquidator, custodian or trustee of the UNDERSIGNED, or of all or any of the property of the UNDERSIGNED, is appointed by court order and such order remains in effect for more than 30 days; or an order for relief is entered with respect to the UNDERSIGNED or the UNDERSIGNED is adjudicated a bankrupt or insolvent, or any of the property of the UNDERSIGNED is sequestered by court order and such order remains in effect for more than 30 days; or a petition is filed against the UNDERSIGNED under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within 30 days after such filing;

(e) any change or threat of change in the character, identity, control, beneficial ownership or existence of CONTRACTOR; or

(f) a payment by SURETY on any BOND.

14. Upon the happening of an EVENT OF DEFAULT, SURETY, at its option and in its sole discretion:

(a) may exercise (in compliance with all applicable securities laws) in respect of the COLLATERAL, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the Uniform Commercial Code of every jurisdiction where such Code is in effect, and SURETY may also, with notice as required by law, at any time or place, sell the COLLATERAL or any part thereof, at public or private sale. Any cash held by SURETY as COLLATERAL and all cash proceeds and any income or interest from said cash proceeds received by SURETY in respect of any sale of, collection from, redemption of or other realization upon or any part of the COLLATERAL following the occurrence of an EVENT OF DEFAULT may, in the discretion of SURETY, be held by SURETY as collateral for, and then and/or at any time thereafter applied against, all or any losses;

(b) may take possession of all or any part of the work under any or all BONDED CONTRACTS, and, at the expense of the UNDERSIGNED, complete, or cause the completion of, such work, or re-let, or consent to the re-letting or completion thereof; and in such event, SURETY may invite the Obligees, and the Obligees are authorized to declare the CONTRACTOR in default under such contracts, any provisions thereof to the contrary notwithstanding. In

addition, CONTRACTOR shall direct that all payments, monies, and properties that may become payable on a BONDED CONTRACT shall be made payable to and sent directly to SURETY. Upon the happening of an EVENT OF DEFAULT, SURETY shall have the right to take immediate possession of the supplies, tools, plant, inventory, equipment, and materials and to use, and consume, if necessary, the same in the performance of any BONDED CONTRACT, by itself or by others; and

(c)  may execute in the name of the CONTRACTOR any agreements deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed; and the CONTRACTOR hereby authorizes SURETY, or such person or persons designated by SURETY, to take immediate possession of such funds, property, and rights, to collect such sums as may be due to the CONTRACTOR, and to endorse, in the name of the CONTRACTOR, and to collect any checks, drafts, warrants and other agreements made and issued in payment of any such funds. SURETY is authorized to assert and prosecute any right or claim hereby assigned, transferred or otherwise conveyed in the name of the CONTRACTOR and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion, subject only to the requirement that it act in good faith, which shall be defined as the absence of deliberate or willful malfeasance.

15.  The UNDERSIGNED shall not, while any BOND or BONDS shall be outstanding and shall not have been released or discharged to SURETY's satisfaction, take any action that would affect or diminish the rights of SURETY under this Agreement.

16.  SURETY is authorized and empowered without notice to or knowledge of the UNDERSIGNED to amend any BOND or to assent to a change in the contracts or obligations covered by said BOND, or to execute additional BONDS, it being expressly understood and agreed that the UNDERSIGNED shall remain bound under the terms of this Agreement even though any such action by SURETY does or might substantially increase the liability of the UNDERSIGNED. The UNDERSIGNED waive notice of default or any other acts giving rise to a claim under a BOND or liability of SURETY under the BONDS. SURETY shall have the right to decline to execute any BOND and to assent or refuse to assent to changes in any BOND without in any way releasing or affecting the obligations of the UNDERSIGNED to SURETY.

17.  If the execution of this Agreement by any of the UNDERSIGNED shall be invalid for any reason, or if any of the UNDERSIGNED shall be released from their obligations hereunder, the terms and conditions hereof shall nevertheless be binding upon and continue in full force and effect as to the rest of the UNDERSIGNED. Nor shall it be a defense to any claim by SURETY hereunder that it was to have procured additional indemnity or security, or that it has procured additional indemnity or security, or that it has settled, compromised, or released other indemnity or security in respect of any such BOND or BONDS. If any provision or provisions of this Agreement be void or unenforceable under the laws of any place governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted. All rights and remedies of SURETY under this Agreement shall be cumulative, and the exercise of or failure to exercise any particular right or remedy at any time shall not be considered to be an election of remedy or a waiver of any other right or remedy. The rights, powers and remedies afforded SURETY by the terms of this Agreement are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against the UNDERSIGNED or others whether by the terms of any other agreement or by operation of law. SURETY shall not incur any liability to any of the UNDERSIGNED in the exercise of the rights granted by this Agreement except for deliberate and willful malfeasance.

18.  The UNDERSIGNED hereby agree to execute such documents and agreements as shall be reasonably necessary or appropriate to the exercise of the rights of SURETY under this Agreement. The UNDERSIGNED hereby irrevocably constitute and appoint SURETY as their true and lawful attorney with the right, but not the obligation, to exercise all of the rights of the UNDERSIGNED assigned, transferred and conveyed to SURETY in this Agreement, hereby giving and granting to SURETY full power and authority to make, execute, endorse and deliver any agreements for the full protection intended to be given to SURETY hereunder as the UNDERSIGNED might or could do.

19.  This Agreement, its riders and addenda may be executed in separate counterparts, none of which need contain signatures of all parties, each of which shall be deemed an original, and all of which taken together constitute one and the same instrument.

20.  Except as hereinafter in this Section provided, any of the UNDERSIGNED may, upon written notice sent by registered or certified mail, return receipt requested, to St. Paul Surety, 5801 Smith Avenue, Baltimore, MD, 21209-3653, Mailstop MC52, to be effective not less than 20 days after receipt, limit their obligations under this

Agreement to BONDS executed by SURETY for the CONTRACTOR prior to the effective date of such notice; provided, however, that such notice shall not be effective with respect to any BOND or BONDS executed after such date (i) upon the award of a contract to the CONTRACTOR on a bid or proposal in respect of which SURETY has executed and delivered a bid or proposal BOND prior to such date, or (ii) which SURETY has become committed to execute prior to such date, or (iii) in connection with any claim, lien, litigation, or other matter involving or relating to any BOND or BONDS executed prior to such date or thereafter executed as hereinbefore in (i) or (ii) provided. Such limitation of the obligations of any of the UNDERSIGNED shall not operate to limit the obligations of, or release, the rest of the UNDERSIGNED whether or not they have notice or knowledge thereof.

21.   With respect to any proceeding brought by SURETY against any UNDERSIGNED arising out of or by reason of this Agreement, each UNDERSIGNED hereby submits to jurisdiction in the State of Washington, in the State of Maryland, in each jurisdiction where a loss under or in respect of any BOND or BONDS occurs, and in each jurisdiction where an UNDERSIGNED resides, is domiciled, is doing business or is found. With respect to any proceeding brought by SURETY on this Agreement in a jurisdiction in which one or more UNDERSIGNED resides, is domiciled, is doing business or is found, each UNDERSIGNED who is not in the jurisdiction hereby designates each UNDERSIGNED who is in such jurisdiction as his agent to receive on his behalf service of process in such action. With respect to any proceeding brought against SURETY and SURETY desires to join any UNDERSIGNED by reason of the undertakings in this Agreement, each UNDERSIGNED agrees that he will, upon written notice of SURETY to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of such UNDERSIGNED's choice. If any UNDERSIGNED fails upon such a notice to appear, such UNDERSIGNED hereby designates the Secretary of the State or territory in which proceedings are pending as his agent for the service of process in any such proceeding.

22.   The rights and remedies afforded SURETY by the terms of this Agreement may not be waived or modified unless agreed to in a writing executed by SURETY. There have been no oral or other agreements as a condition precedent or inducement to the execution of this Agreement by any of the UNDERSIGNED.

23.   Neither this Agreement nor any rights or obligations of the UNDERSIGNED hereunder shall be assigned without the written consent of SURETY endorsed hereon and signed by an officer of SURETY.

DATED this 28th day of June, 2002.

THE UNDERSIGNED REPRESENT TO SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

SIGNATURE OF ALL INDEMNITORS REQUIRED
SEE ATTACHED SIGNATURE PAGE(S)

# St Paul Surety

### Signature Page for Corporations

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY OR RIDER DATED June 28, 2002.

**CORPORATE INDEMNITOR(S):**

ATTEST:

_(Signature of Secretary or an Assistant Secretary)_

John J. Foran, Jr., Clerk

_(Print or Type Name and Title)_

Star Equipment Corporation
_(Company Name)_

By: _____
_(Signature)_

Charlene B. Foran, President
_(Print or Type Name and Title)_

Address:  30 Heath Rd.

S. Easton, MA  02375

EIN:  04-3061231

---

ATTEST:

_(Signature of Secretary or an Assistant Secretary)_

_(Print or Type Name and Title)_

_(Company Name)_

By:

_(Signature)_

_(Print or Type Name and Title)_

Address:

EIN:

---

ATTEST:

_(Signature of Secretary or an Assistant Secretary)_

_(Print or Type Name and Title)_

_(Company Name)_

By:

_(Signature)_

_(Print or Type Name and Title)_

Address:

EIN:

# St.Paul Surety

### Signature Page for Individuals

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY OR RIDER
DATED June 28, 2002.

WITNESS:

_Brian M. Morse_
(Signature)

_BRIAN M. MORSE_
(Print or Type Name)

Address: _285 Washington St._
_No. Easton, MA 02356_

INDIVIDUAL INDEMNITOR(S):

_Charlene Valentin Foran_
(Signature)

Charlene B. Foran
(Print or Type Name)

Address: _30 Heath Rd._
_S. Easton, MA 02375_

Social Security No. 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

---

WITNESS:

_Brian M. Morse_
(Signature)

_Brian M. Morse_
(Print or Type Name)

Address: _285 Washington St._
_No. Easton, MA 02356_

_John J. Foran Jr._
(Signature)

John J. Foran, Jr.
(Print or Type Name)

Address: _30 Heath Rd._
_S. Easton, MA 02375_

Social Security No. 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

---

WITNESS:

_____
(Signature)

_____
(Print or Type Name)

Address: _____

_____

_____
(Signature)

_____
(Print or Type Name)

Address: _____

_____

Social Security No. _____

86194 Rev. 03-2001

**St Paul Surety**

### GENERAL AGREEMENT OF INDEMNITY
### RESOLUTION AND CERTIFICATION

WHEREAS, the President of Star Equipment Corp. (the "Corporation") has executed or will execute a certain GENERAL AGREEMENT OF INDEMNITY, a copy of which is attached hereto and made a part hereof, in favor of St. Paul Fire and Marine Insurance Company, Seaboard Surety Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Underwriters, Inc., Fidelity and Guaranty Insurance Company, and any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and reinsurers, hereinafter referred to collectively as "SURETY," protecting it in connection with its assuming suretyship as more fully described therein, said GENERAL AGREEMENT OF INDEMNITY having been read at a meeting held on _____June 28_____, 20 0 2 and fully considered and approved by the directors present; and

WHEREAS, the said GENERAL AGREEMENT OF INDEMNITY has been accepted by SURETY upon the warranty of said officer that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY.

NOW, THEREFORE, BE IT RESOLVED that said officer of this Corporation was authorized, as of _____June 28_____, 20 0 2 and continues to be authorized, to execute on behalf of this Corporation said GENERAL AGREEMENT OF INDEMNITY, and that the act of said officer of this Corporation who has already executed said GENERAL AGREEMENT OF INDEMNITY is hereby unanimously ratified and confirmed as the act of this Corporation.

BE IT FURTHER RESOLVED that the aforesaid warranty that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY be, and it is hereby, ratified and confirmed as the warranty of this Corporation.

I hereby certify that I am the Clerk of Star Equipment Corp. and that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on _____June 28_____, 20 0 2 in the office of the said Corporation, at which meeting a quorum of the Directors was present.

IN WITNESS WHEREOF, I have hereunto set my hand this 28th day of June _____, 20 02.

_____
(Signature of the secretary or an assistant secretary)

John J. Foran, Jr., Clerk
_____
(Print or type name and title)

86192 Rev. 03-2001

# EXHIBIT B

SECTION 00610
CONTRACT BOND


**PERFORMANCE BOND:**

(NOTE:  This Bond is issued simultaneously with the attached Labor and Materials Bonds in favor of the Owner.)

KNOW ALL MEN BY THESE PRESENTS:  That we

**Star Equipment Corp.**

(~~an individual, a partnership~~, a corporation)

duly organized under the Laws of the State (or Commonwealth) of

**Massachusetts**_____, and having a usual place of

business at ___**30 Heath Road, South Easton, MA 02375**_____, as Principal, and

**Fidelity and Guaranty Insurance Company**_____ a corporation duly

organized under the Laws of the State (or Commonwealth) of ____**Iowa**_____

and duly authorized to do business in the State (or Commonwealth) of___**Massachusetts**___,

and having a usual place of business at ___**Franklin Oaks Office Park, 124 Grove Street, Franklin, MA 02038**___

as Surety are holden and stand firmly bound and obligated unto the Town of Seekonk, MA as

obligee, in the sum of **Two Hundred Eighty-Five Thousand Eighty Three and 13/100—— ($285,083.13)**

lawful money of the United States of America, to and for the true payment whereof we bind

ourselves and, each of us, our heirs, executors, administrators, successors, and assigns, jointly and

severally, firmly by these presents.

WHEREAS, the Principal, by means of a written AGREEMENT (which together with the Contract Documents in said AGREEMENT referred to are collectively sometimes referred to as

the "CONTRACT") dated _____ has entered into a contract with the said obligee for Installation of Replacement Watermains and Appurtenant Work, Contract 2003-W1, a copy of which AGREEMENT is attached hereto and by reference made a part hereof.

NOW THEREFORE, THE CONDITION of this obligation is such that if the Principal shall well and truly keep and fully and faithfully perform all of the terms and conditions of said AGREEMENT and of the "Contract Documents" referred to in said AGREEMENT (which collectively are hereinafter and in said AGREEMENT sometimes referred to as the "Contract") and all modifications thereof on the Principal's part to be performed, this obligation shall be void; otherwise it shall remain in full force and effect.

Wherever the said Principal shall be, and declared by the Owner to be, in default under the said Contract, the Owner having performed the Owner's obligations thereunder, the Surety, for value received, shall promptly remedy the default, or, at the option of the Owner, shall promptly

(a) Complete the said AGREEMENT and/or Contract in accordance with its terms and conditions, or

(b) Obtain a bid or bids for submission to and the approval of the Owner for completing the said AGREEMENT and/or Contract and any modifications thereof in accordance with the terms and conditions thereof, and upon determination by the Owner and the Surety of the lowest responsible and acceptable bidder, arrange for a contract between such bidder and the Owner, and make available to the Owner as the Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less a sum that shall be equal to the difference between the Contract price as fixed and provided in said AGREEMENT and/or Contract or any modifications thereof to be paid thereunder to the Principal and the amount previously paid by the Owner to and/or for the account of and/or chargeable against the Principal, but not exceeding (including other costs and damages for which the Surety may be liable hereunder) the amount set forth in the first paragraph hereof.

The Surety, for value received, agrees further that no changes in, omissions from, or alterations, modifications or additions to the terms and provisions of said AGREEMENT and/or Contract or the Work to be performed thereunder, and that no extensions of time given or changes made in the manner or time of making payments thereunder, shall in any way affect the Surety's obligations on this Bond, and the Surety hereby waives notice of any such changes, omissions, alterations, modifications, additions or extensions.

No right of action shall accrue on this Bond to or for the use of any persons other than the Owner named herein or the heirs, executors, administrators, successors and assigns of the Owner.

IN WITNESS WHEREOF,  we have hereunto set our hands and seals to counterparts of this

Bond, this _____ 11 th _____ day of ____ JUNE _____ , in the year Two

Thousand Three.

Star Equipment Corp.

By: _Chalme Salutie Tran_____    *SEAL*
        Principal PRESIDENT

_____    *SEAL*
        Principal

Fidelity and Guaranty Insurance Company

By: _Marie Ferguson_____    *SEAL*
        Surety Marie Ferguson, Attorney–In–Fact

_____    *SEAL*
        Surety

Surety Address: ___Franklin Oaks Office Park, 124 Grove Street, Franklin, MA 02038__

Counter-Signed MA Resident Agent – By: ___John E. DeVries, Jr._____

Agent's Address: ___675 Main Street, Waltham, MA 02451_____

Telephone: _____781–894–8500_____

(NOTE:

If the Principal (Contractor) is a partnership, the Bond should be signed by each of the partners.

If the Principal (Contractor) is a Corporation, the Bond should be signed in its correct corporate name by its duly authorized officer or officers.

If this Bond is signed on behalf of the Surety by an attorney-in-fact, there should be attached to it a duly certified copy of his power of attorney showing his authority to sign such Bonds.

There should be executed an appropriate number of counterparts of the Bond corresponding to the number of counterparts of the AGREEMENT.)

## LABOR AND MATERIALS BONDS:

(NOTE: This Bond is issued simultaneously with the attached Performance Bond in favor of the Owner.)

KNOW ALL MEN BY THESE PRESENTS:

That we, _____ **Star Equipment Corp.** _____

(~~an individual, a partnership~~, a corporation)

duly organized under the Laws of the State (or Commonwealth) of _____ **Massachusetts** ,

and having a usual place of business at _____ **30 Heath Road, South Easton, MA 02375** _____

as Principal, and _____ **Fidelity and Guaranty Insurance Company** _____

a corporation duly organized under the Laws of the State (or Commonwealth) of

_____ **Iowa** _____ and duly

authorized to do business in the State (or Commonwealth) of _____ **Massachusetts** and

having a usual place of business at **Franklin Oaks Office Park, 124 Grove Street, Franklin, MA 02038**

as Surety, are holden and stand firmly bound and obligated unto the Town of Seekonk, MA, as

obligee, in the sum of **Two Hundred Eighty-Five Thousand Eighty Three and 13/00 ($285,**083.13) lawful money of the United States of America, to and for the true payment whereof we bind ourselves and, each of us, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal, by means of a written AGREEMENT (which together with the Contract Documents in said AGREEMENT referred to are collectively sometimes referred to as

the "Contract") dated _____ has entered into a contract with the said obligee for Installation of Replacement Watermains and Appurtenant Work, Contract 2003-W1, a copy of which AGREEMENT is attached hereto and by reference made a part hereof.

NOW THEREFORE, THE CONDITION of this obligation is such, that if the Principal shall promptly make payments to all claimants as hereinafter defined, for all labor performed or furnished and for all materials and equipment furnished for or used in or in connection with the Work called for by said AGREEMENT and/or Contract and any modifications thereof, including lumber used but not incorporated in said Work, and for the rental or hire of vehicles, tools and other appliances and equipment furnished for or used in connection with said Work, this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal for labor, materials and/or equipment used or reasonably required for use in the performance of the said Work, labor and materials being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the said AGREEMENT and/or Contract and any modifications thereof.

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials or equipment were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant,

   (a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials or equipment for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials or equipment were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the said Work is located, save that such service need not be made by a public officer;

   (b) After the expiration of one (1) year following the date on which the Principal ceased work on said AGREEMENT and/or Contract and any modifications thereof, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

   (c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the said Work, or any part thereof, is situated, or in the United States District Court for the district in which the said Work, or any part thereof, is situated, and not elsewhere.

4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said AGREEMENT and/or Contract or said Work, whether or not claim for the amount of such lien be presented under and against this bond.

The Surety, for value received, agrees further that no changes in, omissions from, or alterations, modifications or additions to the terms and provisions of said AGREEMENT and/or Contract or the Work to be performed thereunder, and that no extensions of time given or changes made in the manner of time of making payments thereunder, shall in any way affect the Surety's obligations on this Bond, and the Surety hereby waives notice of any such changes, omissions, alterations, modifications, additions or extensions.

**IN WITNESS WHEREOF,** we have hereunto set our hands and seals to counterparts of this

Bond, this _____ 11th _____ day of _____ JUNE _____, in the year Two

Thousand Three.

> Star Equipment Corp.
>
> By: _Charlene Juletia Tran_      *SEAL*
>          Principal   PRESIDENT
>
> _____      *SEAL*
>          Principal
>
> Fidelity and Guaranty Insurance Company
>
> By: _Marie Ferguson_      *SEAL*
>          Surety   **Marie Ferguson, Attorney-In-Fact**
>
> _____      *SEAL*
>          Surety

Surety Address: **Franklin Oaks Office Park, 124 Grove Street, Franklin, MA 02038**

Counter-Signed MA Resident Agent – By: **John S. DeVries, Jr.**

Agent's Address: **675 Main Street, Waltham, MA 02451**

Telephone: **781-894-8500**

(NOTE:
If the Principal (Contractor) is a partnership, the Bond should be signed by each of the partners.

If the Principal (Contractor) is a Corporation, the Bond should be signed in its correct corporate name by its duly authorized officer or officers.

If this Bond is signed on behalf of the Surety by an attorney-in-fact, there should be attached to it a duly certified copy of his power of attorney showing his authority to sign such Bonds.

There should be executed an appropriate number of counterparts of the Bond corresponding to the number of counterparts of the AGREEMENT.)

**StPaulSurety**    St. Paul Fire and Marine Insurance Company    United States Fidelity and Guaranty Company
St. Paul Guardian Insurance Company    Fidelity and Guaranty Insurance Company
St. Paul Mercury Insurance Company    Fidelity and Guaranty Insurance Underwriters, Inc
Seaboard Surety Company    St. Paul Medical Liability Insurance Company.

Bond No. SZ5145

## RIDER CONTAINING
## DISCLOSURE NOTICE OF TERRORISM COVERAGE

This disclosure notice is required by the Terrorism Risk Insurance Act of 2002. No action is required on your part. This Disclosure Notice is incorporated in and a part of the attached bond.

You should know that, effective November 26, 2002, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by the Terrorism Risk Insurance Act of 2002. Under this formula, the United States reimburses 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

There is a cap on our liability to pay for such losses if the aggregate amount of insured losses under the Act exceeds $100,000,000,000 during the applicable period for all insured and all insurers combined. In that case, we will not be liable for the payment of any amount which exceeds that aggregate amount of $100,000,000,000.

The portion of your premium that is attributable to coverage for acts of terrorism is $0.00.

**IMPORTANT NOTE: THE COST OF TERRORISM COVERAGE IS SUBJECT TO CHANGE ON ANY BOND THAT PREMIUM IS CHARGED ANNUALLY.**

SIGNED AND SEALED this _____ day of _____, 20__.

**SURETY:** Fidelity and Guaranty Insurance    [SEAL].
Company

Signature: _____
Marie Ferguson            Attorney-in-Fact

## CERTIFICATE OF ACKNOWLEDGMENT OF CONTRACTOR IF A CORPORATION
## FOR PERFORMANCE BONDS

State of _MASSACHUSETTS_ )

_____ )

County of _BRISTOL_ )

On this _11th_ day of _JUNE_, 2003,

before me personally came _CARMENE BALESTRA TORAN_

to me known, who being by me duly sworn, did depose and say as follows:

That he resides at _30 HEATH ROAD, SOUTH EASTON, MA_

and is the _PRESIDENT_

of _STAR EQUIPMENT CORP._

the corporation described in and which executed the foregoing instrument; that he knows the corporate seal of said corporation; that the seal affixed to the foregoing instrument is such corporate seal and it was so affixed by order of the Board of Directors of said corporation; and that by the like order he signed thereto his name and official designation.

_____         *SEAL*
Notary Public

My commission expires _March 25, 2005_

## END OF SECTION

**The St Paul**

## POWER OF ATTORNEY

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No.    23784    Certificate No. **1784056**

KNOW ALL MEN BY THESE PRESENTS: That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin *(herein collectively called the "Companies")*, and that the Companies do hereby make, constitute and appoint

**Thomas P. Durkin, Marie Ferguson, John S. DeVries Jr., John S. Mahoney, and Virginia M. Michaels**

of the City of _____ **Waltham** _____, State _____ **Massachusetts** _____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and sealed this 7th day of _____ May _____ 2003

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

PETER W. CARMAN, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this _____ 7th _____ day of _____ May _____, 2003, before me, the undersigned officer, personally appeared Peter W. Carman and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 1st day of July, 2006.

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2002 Printed in U.S.A.

**EXHIBIT C**

Settlement Memorandum of Understanding

1. Fidelity & Guaranty Ins. Co. ("Fidelity") will pay to the Seekonk Water District/Town of Seekonk, Mass, the sum of Fifty Thousand dollars ($50,000.00);

2. The parties hereto agree to Release all claims asserted in the action entitled Fidelity & Guaranty Ins. Co. v. Star Equip. Corp, et al, #1:04-cv-10250-EFH (D.Mass) except that Star, Charlene Foran & John Foran do ~~not release~~ Star and Fidelity do not Release claims & defenses they have against each other.

3. This settlement is conditioned upon:
(a) Approval by appropriate municipal authorities; and

(b) Execution of customary Releases and settlement agreement.

Dated: March 4, 2006

STAR EQUIPMENT, by
_____ n.a.
Charlene Foran
_____ n.a.
Charlene Foran
_____
John Foran

SEEKONK WATER DISTRICT

BY _____ CHAIRMAN
BY _____ ATTORNEY FOR

FIDELITY & GUARANTY Ins. Co.
By its attorney
_____
Eric H. Loeffler

AS TO FORM:
_____
COUNSEL FOR STAR AND/OR FORANS

_____

# EXHIBIT D

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

FIDELITY & GUARANTY INS. CO.,
Plaintiff

v.

STAR EQUIPMENT CORPORATION,
ET AL.,
Defendants.

CIVIL ACTION NO.:
04-10250-EFH

## O R D E R

November 29, 2006

HARRINGTON, S.D.J.

In response to the joint motion of Plaintiff Fidelity & Guaranty Insurance Company

("F&G") and the Defendant Town of Seekonk, Seekonk Water District ("Seekonk") for

reconsideration of the Court's order denying their joint motion to enforce the Settlement

Memorandum of Understanding ("Settlement Agreement"), the Court, after hearing and

consideration of the parties' submissions on that motion, rules as follows:

The joint motion for reconsideration to enforce the Settlement Agreement executed by the

parties in this case and their attorneys on March 4, 2006, following a mediation at the court with

ADR Panel Member Scott A. Birnbaum, Esq., is allowed and enforcement shall be granted. The

Settlement Agreement, written by the mediator, provides:

1.    Fidelity and Guaranty Ins. Co. ("Fidelity") will pay to the Seekonk Water
District/Town of Seekonk, Mass., the sum of Fifty Thousand dollars
($50,000.00);

2.      The parties hereto agree to release all claims asserted in the action entitled Fidelity & Guaranty Ins. Co. v. Star Equipment Corp. et. al., Civil Action No. 04-10250-EFH (D.Mass.), except that Star, Charlene Foran and John Foran and Fidelity do not release claims and defenses they have against each other.

3.      This settlement is conditioned upon:

     a)      Approval by appropriate municipal authorities; and

     b)      Execution of customary releases and settlement agreement.

The Settlement Agreement was duly executed by all parties, their counsel and the mediator.

The trial between Plaintiff Fidelity & Guaranty Insurance Company and Defendant Star Equipment Corporation, et al., shall be held as scheduled on March 26, 2007.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

# EXHIBIT E



# HINSHAW
& CULBERTSON LLP

January 19, 2007

**ATTORNEYS AT LAW**

One International Place
Fort Hill Square
Third Floor
Boston, MA 02110

617-213-7000
617-213-7001 (fax)
www.hinshawlaw.com

**VIA OVERNIGHT MAIL**

Seekonk Water District
50 Water Lane
Seekonk, MA 021771
Attn: Board of Commissioners

| | | |
|---|---|---|
| Re: | Principal: | **Star Equipment Corporation** |
| | Obligee: | **Seekonk Water District** |
| | Surety: | **Fidelity and Guaranty Insurance Company** |
| | Bond: | **SZ5145** |
| | Claim: | **0400SZ5145** |
| | Project: | **Installation of Replacement Watermains and Appurtenant Work** |
| | Our File: | **7791-856797** |

Dear Sir/Madam:

With regard to the above-referenced matter, enclosed is a re-issued settlement check in the amount of $50,000.00.

Thank you for your cooperation and patience.

Very truly yours,

HINSHAW & CULBERTSON LLP

Eric H. Loeffler
eloeffler@hinshawlaw.com

EHL:lam
Enclosures

cc:   Mr. Timothy Snyder
      Andrew S. Brooslin, Esq.

34027652v1 856797

Arizona   California   Florida   Illinois   Indiana   Massachusetts   Minnesota   Missouri   New York   Oregon   Rhode Island   Wisconsin

BOND UNIT, ATTN: D. WOJEK 251
1 TOWER SQUARE
HARTFORD, CT 06183                    CAP
A-101-BND-007015037-0000084899-0052

**TRAVELERS**

## DISBURSEMENT PROCESSING

The Seekonk Water District
Hinshaw Culbertson Atn Loefflr
1 International Pl, 3d Floor
BOSTON MA 02110

| | |
|---|---|
| FORMAT: | BD1 |
| DATE: | 01/15/07 |
| PAYEE: | BND-007015037 |
| CHECK NUMBER: | **00999693** |
| CHECK AMOUNT: | $*****50,000.00 |

FOR PAYMENT INFORMATION
PHONE:          SEE BELOW

Claim: 111-SC-SZ514501-RG, M Bond: 006-SB-SZ5145
Mgr: Kimberly Zanotta       Phone: (443) 353-2121

Mgr: Kimberly Zanotta       Phone: (443) 353-2121
Insured: STAR EQUIPMENT

**Full and final settlement of all matters relating to the above-referenced bond and the matters involving the Town of Seekonk Water District.**

0054

DETACH HERE                                                    DETACH HERE



**TRAVELERS**

CHECK NUMBER  00999693
FORMAT 390

Bank of America

DATE   01/15/07

A-101-BND-007015037-0000084899-0052
FOR PAYMENT INFORMATION
PHONE:     SEE BELOW
******* AND NO/100 DOLLARS ****
PAY    ***********************************

$*****50,000.00*******

PAY
TO THE
ORDER OF
The Seekonk Water District
Hinshaw Culbertson Atn Loefflr
1 International Pl, 3d Floor
BOSTON          MA 02110-2602

_Douglas K. Russell_
AUTHORIZED SIGNATURE

THIS CHECK HAS A RED BACKGROUND

⑆00999693⑆ ⑉011900445⑈ 000000061233⑈