UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY and GUARANTY
INSURANCE COMPANY,

    Plaintiff

v.                                        Civil Action No. 04-10250 EFH

STAR EQUIPMENT CORPORATION,
CHARLENE B. FORAN, JOHN J. FORAN
and TOWN OF SEEKONK,

    Defendants


**AFFIDAVIT OF JOHN J. FORAN**


I, John J. Foran, being first duly sworn, do hereby depose and state as follows.

1. I make each of the following statements of my own personal knowledge.

2. I am a principal of Star Equipment Corporation, a defendant in this case. I was personally involved in every interaction that Star had with the Town of Seekonk project.

3. My company won a competitive bid for the installation of water lines on various streets in Seekonk. We began the work in July of 2003. On or about July 21, 2003, Star encountered site conditions that were materially different from those to be expected on a typical public way, as depicted in the bid package. I advised Seekonk officials that, as a result, my company would be sustaining substantially

greater costs to complete the work. The trenches I dug were collapsing, and once I got below-grade, I was encountering rock, which is harder to dig, and more difficult to remove from a trench. I told the town officials that we had a right to expect a 4-6 inch base coat, as this is what is typical for a public way; and if that existed, the trench would hold up while we excavated. Also, it is typical that, under such a base coat, you find gravel with some rock in it. Here, however, there was no gravel, it was all rock. These conditions were atypical, not what was represented, and would result in the job taking nearly twice as long as had been projected. For this reason, I sought a contract adjustment.

4. The town engineer said he would look at the problem, but asked me to continue working, which I did, as an exercise of good faith, and a display of Star's intention to honor its contractual obligations.

5. After three weeks without resolution, I met with Seekonk officials on August 8, 2003 to discuss these issues. I brought my attorney, Mark Greene, and Seekonk had their lawyers present, as well.

6. During that meeting, my lawyer and the Seekonk lawyer left the room at one point, and when they returned, they told me they had reached an agreement. I was told that Star would leave the job, Seekonk would pay for work completed, and the contract between the parties would be void without further recourse. The relationship between the parties had deteriorated, and this was deemed the best resolution by all present. The amount owed to Star at the time was approximately forty thousand ($40,000.00) dollars.

7. It was only after the parties reached this agreement that Star left the job, and it was only because of this agreement that I did so.  I had worked on the job for the three weeks prior despite this issue.   Star only left the job once Seekonk said we should do so.  We agreed to release each other from the contract, and  Seekonk would calculate what they owed Star and pay us; I was fine with that.

8. Four weeks later, Seekonk's engineer disputed some of the work and what was owed; that was when, for the first time, Seekonk said we were in  "default."

9. Again, Star Equipment and I would never have left the job site in Seekonk if we did not first have an agreement with the town's officials and engineers that we should do so.

10. In addition to the foregoing, I contacted my insurance agent, who contacted the bonding company, Fidelity.  Fidelity is the plaintiff in this action.  At each of the meetings referenced above, Fidelity representatives (including lawyers and an engineer) were present, provided input and advice, and led me to believe that they were endorsing my actions in (a) working out an exit strategy with Seekonk; and (b) leaving the job after the strategy was agreed to by all parties.

11. Star Equipment did nothing to trigger the indemnity agreement, nor did we do anything that caused a legitimate claim to be raised under the indemnity agreement.  At all times, I acted with the full knowledge and consent of both Fidelity and the town of Seekonk.  For that reason, there was no legitimate basis for Seekonk to make a claim on the bond after having released Star from the contract.  It only did so, after a dispute over the amount owed to Star arose, Seekonk making its "claim" as a defensive response to that dispute.

12. I also dispute that Fidelity has acted in good faith at all times here. My wife and I sat with Kim Zannotta, the authorized representative for Fidelity at the mediation that occurred on March 4, 2006. During that mediation, Ms. Zannotta told us, in the presence of the attorneys for Star and Fidelity, that Fidelity would "work with us" to achieve what we called a "walk-away" if we would sign the mediation settlement.

13. We agreed to give up our claim against Seekonk – a claim for a payment of money that Seekonk had already agreed to, with the amount being the only thing in dispute – in return for Fidelity's agreement to let my wife and I out of the case without making a payment. Now, having signed the agreement, they are reneging on that promise, as made through their authorized representative – an act we view as bad faith.

I CERTIFY THE FOREGOING UNDER THE PENALTY OF PERJURY THIS 27TH DAY OF FEBRUARY, 2007.

/s/
John J. Foran