**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FIDELITY AND GUARANTY
INSURANCE COMPANY,

      Plaintiff,

v.                                                    CIVIL ACTION NO. 1:04-CV-10250-EFH

STAR EQUIPMENT CORPORATION,
CHARLENE B. FORAN, JOHN J. FORAN,
and TOWN OF SEEKONK,

      Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**FIDELITY AND GUARANTY INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Fidelity and Guaranty Insurance Company ("F&G"), submits this

Memorandum of Law in support of its Motion for Summary Judgment against the defendants,

Star Equipment Corporation ("Star"), Charlene B. Foran and John J. Foran (hereinafter

collectively referred to as the "Defendants" or "Indemnitors").  Pursuant to the express terms of a

written indemnity agreement executed by the Indemnitors, the Indemnitors are required to

reimburse F&G for all loss, costs, attorneys' fees, interest and expense of every kind or nature

incurred by F&G in its investigation, evaluation, defense and/or discharge of claims made

against surety bonds issued by F&G on behalf of Star, as principal.

The material facts in this case can be simply stated:

1.      The Indemnitors signed an unambiguous and comprehensive agreement of

indemnity promising to indemnify F&G for any and all losses and expenses F&G incurred as a

result of issuing surety bonds on behalf of its principal, Star;

1

2.      F&G, in good faith, incurred losses and expenses as a direct and proximate result of the issuance of surety bonds on behalf of Star;

3.      The Indemnitors have failed and/or refused to reimburse F&G for its losses and expenses in accordance with the specific terms and conditions of the indemnity agreement.

The relevant law can also be simply stated:

1.      A surety such as F&G is entitled to indemnification for payments made in good faith to discharge its principal's obligations; and

2.      Indemnity agreements, such as the one at issue in this case, are valid and enforceable, and are intended to provide comprehensive protection to the surety for losses sustained in fulfilling its obligations on bonds, including reimbursement of all legal and consultant fees.

Based on the foregoing, there can be no reasonable dispute that, as a signatories to the written agreement of indemnity, the Indemnitors are required to indemnify F&G for all of its losses, including claims paid by F&G, expenses and attorneys' fees incurred in investigating and defending claims made against the bonds and in enforcing the terms of the indemnity agreement.

## I.      UNDISPUTED MATERIAL FACTS

At all times relevant to this action, F&G has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.  See F&G's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("F&G's Stmnt."), ¶1.  At all times relevant to this action, Star Equipment Corp. ("Star") is or was in the business of construction contracting.  F&G's Stmnt., ¶2.

On or about June 28, 2002, Star, Charlene B. Foran and John J. Foran (hereinafter collectively referred to as "the Indemnitors") executed a General Agreement of Indemnity

2

("GAI") for the purpose of indemnifying F&G in connection with surety bonds issued by F&G on behalf of Star for certain construction projects. F&G's Stmnt., ¶3.

The GAI provides (4) that "the [Indemnitors] shall indemnify [F&G] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature . . . which [F&G] may sustain, incur or become liable for by reason of having executed or procured the execution of any Bond or Bonds, or by making any investigation of any matter concerning any Bond or Bonds, or by prosecuting or defending any action in connection with any Bond or Bonds, or by recovering any salvage or enforcing this Agreement." F&G's Stmnt., ¶4. The GAI provides (7) that F&G "may settle or compromise any claim, liability, demand, suit or judgment upon any Bond or Bonds executed or procured by it, and any such settlement or compromise shall be binding upon the [Indemnitors]." F&G's Stmnt., ¶5. The GAI provides (7) that "[v]ouchers or other evidence or payments made by [F&G] shall be prima facie evidence of the fact and amount of the liability of the [Indemnitors] to [F&G]." F&G's Stmnt., ¶6.

On June 24, 2002, Star entered into a contract with the Town of Seekonk, Massachusetts ("Seekonk") to perform work on the project known as "Installation of Replacement Watermains and Appurtenant Work, Contract No. 2003-W1," in Seekonk, Massachusetts ("the Project"). F&G's Stmnt., ¶7. As a direct and proximate result of the Indemnitors executing the GAI, and in reliance thereon, F&G, as surety, executed a Performance Bond ("the Performance Bond") and a Labor and Materials payment bond ("the Payment Bond") at the request and on behalf of Star, as principal, for the benefit of the Seekonk, as obligee, for the Project. F&G's Stmnt., ¶8.

By letter dated September 11, 2003, Seekonk gave notice to F&G that Star was in default of its contractual obligations and demanded that F&G perform its obligations under the

3

Performance Bond.  Star responded to Seekonk and to F&G, denying that Star was in default of its contractual obligations.  F&G's Stmnt., ¶9.  On or about February 5, 2004, F&G commenced this declaratory judgment action due to a controversy between Star and Seekonk as to whether these parties had mutually agreed to settle their dispute and, correspondingly, whether F&G has any liability on the Bond as a result.  F&G also asserted claims against the Indemnitors for breach of the GAI.  F&G's Stmnt., ¶10.

The parties subsequently agreed to submit the case to mediation through the Court's ADR program which occurred on March 4, 2006.  All parties, their representatives and counsel appeared at the mediation.  F&G's Stmnt., ¶11.  The parties came to an agreement and the parties, their representatives and their counsel signed and executed a document entitled "Settlement Memorandum of Understanding" ("Settlement Memorandum").  F&G's Stmnt., ¶12. The Settlement Memorandum provides:

### Settlement Memorandum of Understanding

1.      Fidelity and Guaranty Ins. Co. ("Fidelity") will pay to the Seekonk Water District/Town of Seekonk, Mass., the sum of Fifty Thousand dollars ($50,000.00);

2.      The parties hereto agree to Release all claims asserted in the action entitled Fidelity & Guaranty Ins. Co. v. Star Equipment Corp., et al., #1:04-cv-10250-EFH (D. Mass.) except that Star, Charlene Foran & John Foran and Fidelity do not release claims & defenses they have against each other.

3.      This settlement is conditioned upon:

   (a)      Approval by appropriate municipal authorities; and

   (b)      Execution of customary releases and settlement agreement.

F&G's Stmnt., ¶12.  The Settlement Memorandum was executed by all parties, their counsel and the mediator.  Id.

4

The Indemnitors subsequently refused to abide by the terms of the agreement.  F&G's

Stmnt., ¶13.  On July 28, 2006, Seekonk and F&G filed a Joint Motion to Enforce Settlement

Agreement, which the Court denied without a hearing on August 9, 2006.  F&G's Stmnt., ¶14.

On November 3, 2006, F&G and Seekonk filed a Joint Motion requesting that the Court

reconsider its decision in light of the express terms of the Settlement Memorandum and well-

established case law concerning the enforcement of settlement agreements.  F&G's Stmnt., ¶15.

On November 28, 2006, the Court held a hearing on the Joint Motion for reconsideration

and, on November 29, 2006, the Court entered an Order allowing the Motion.  Pursuant to the

November 29, 2006 Order, the Court also enforced the settlement agreement.  F&G's Stmnt.,

¶16.

Following the approval of the settlement, on or about January 19, 2007, F&G paid

Seekonk $50,000.00 pursuant to the terms of the settlement agreement.  F&G's Stmnt., ¶17.

F&G also received a claim from Public Works Supply Company ("PWS") on the Payment Bond

issued with respect to the Project.  On or about February 24, 2004, F&G, in good faith and

pursuant to its obligations as surety, investigated and ultimately resolved the PWS claim by

making a payment to PWS in the amount of $24,229.05.  F&G's Stmnt., ¶18.  As result of the

forgoing, F&G has sustained losses in the form of payments to bond claimants (Seekonk and

PWS) in the amount of $74,229.05.  F&G's Stmnt., ¶19.

F&G has also incurred attorneys' fees and expenses in the amount of $36,657.50 in the

investigation, defense and resolution of claims made on the Bonds, and in enforcing the terms of

the GAI in this action, all of which are recoverable under the specific terms of the GAI.[1]  F&G's

Stmnt., ¶20.  Thus, F&G has incurred a total loss in the amount of at least $110,886.55, and

---

[1]  F&G reserves the right to seek reimbursement for the additional attorneys' fees and expenses that will be incurred
in further prosecuting this action in accordance with the express terms of the GAI.

34028070v1 856797

anticipates incurring additional attorneys' fees and expenses in further prosecution of this action. F&G's Stmnt., ¶21.

The Indemnitors have not reimbursed F&G for these losses, costs and expenses in violation of the express terms of the GAI. F&G's Stmnt., ¶22. At all times relevant hereto, F&G has acted in good faith. F&G's Stmnt., ¶23. F&G has complied with all conditions precedent to maintaining this action. F&G's Stmnt., ¶24.

## II.    ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505 (1986); Fed. R. Civ. P. 56(c). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. Anderson, 477 U.S. at 254, 106 S. Ct. 2505. A fact is material when it "might affect the outcome of the suit under the governing law." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id.

The movant has the initial burden of production, which it can meet either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the movant has met its burden, the non-moving party must "go beyond the pleadings, and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a material issue for trial." Id. at 323-324, 106 S. Ct. 2548 (internal quotation marks omitted).

6

34028070v1 856797

**B.     F&G Is Entitled To Indemnification As a Matter Of Law Pursuant To The Express Terms Of The GAI.**

An express indemnity agreement between a surety and its indemnitors, like the one executed by the Indemnitors in this case, is to be interpreted "like any ordinary contract, with attention to language, background, and purpose." Speers v. H.P. Hood, Inc., 22 Mass. App. Ct. 598, 600 (1986).  The Supreme Judicial Court of Massachusetts has specifically held, in construing similar indemnity agreements, that "[i]t is plain that the broad language of [the indemnity clause] manifests an intention to provide comprehensive protection to the [surety] for any losses which it might sustain because of its obligations on these surety bonds." Peerless Cas. Co. v. Marinucci Bros. & Co., 336 Mass. 691, 695 (1958) (emphasis added), citing Curtis v. Banker, 136 Mass. 355, 359 (1884) and Hartford Accident & Indemnity Company v. Casassa, 301 Mass. 246, 255 (1938).

It is well settled in Massachusetts and elsewhere that a surety is entitled to indemnification for payments made to discharge its principal's obligations.  See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962); Admiral Drywall, Inc. v. Cullen, 56 F.3d 4, 5 (1st Cir. 1995).  Massachusetts courts have specifically held that a surety seeking indemnification based on an indemnity agreement is entitled to judgment as a matter of law where (1) the defendants signed the indemnity agreement, (2) the surety incurred losses, and (3) the defendants have refused to indemnify the surety.  See Hartford Acc. & Indemn. Co. v. Millis Roofing and Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999 (1981) (holding merit of surety's payments not material because surety averred that it settled claims based on good faith belief, and defendants had no evidence to contradict); American Employers' Ins. Co. v. Horton, 35 Mass. App. Ct. 921, 923-24 (1993) (holding defendants' expressions of belief in disagreement with surety's payments not sufficient to defeat summary judgment).  Thus, absent a showing of bad faith on the part of

7

F&G, which the Indemnitors cannot show here, the Indemnitors are liable to reimburse F&G for its losses and expenses.  See Constructora Andrade Gutierrez, S.A. v. American Intern. Ins. Co. of Puerto Rico, 467 F.3d 38 (1st Cir. 2006) ("when an indemnity agreement gives a surety broad discretion to pay claims triggering the indemnity agreement, the only defense an indemnitor may raise against a claim by the surety for indemnification is that the surety committed fraud or collusion, or otherwise acted in bad faith in paying the claim").

The obligation to reimburse a surety for its outlay extends to reimbursement of all legal and investigative fees incurred by the surety.  See Peerless, 336 Mass. at 695 (surety entitled to reimbursement of fees incurred to investigate and remedy principal's default); Hartford Accident & Indemnity Co., 301 Mass. at 255 (same); see also Leventhal v. Krinsky, 325 Mass. 336, 341 (1950) (holding that reasonable attorneys' fees may be recovered where contract between parties provided for their payment).

It is undisputed that the Indemnitors signed the GAI, which provides that the Indemnitors, and each of them:

> shall indemnify [F&G] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature . . . which [F&G] may sustain, incur or become liable for by reason of having executed or procured the execution of any Bond or Bonds, or by making any investigation of any matter concerning any Bond or Bonds, or by prosecuting or defending any action in connection with any Bond or Bonds, or by recovering any salvage or enforcing this Agreement.

See F&G's Stmnt., ¶4.

Given the firmly established precedents in Massachusetts and elsewhere, there is no doubt that F&G is entitled to summary judgment on its indemnification as a matter of law.  See, e.g., Transamerica Premier Ins. Co. v. Electro Maintenance and Service Corp., 1994 WL 879652 (Mass. Super. 1994) (granting surety's motion for summary judgment where principal failed to

8

34028070v1 856797

show that fees were incurred in bad faith); <u>Union Pacific Ins. Co. v. Caruso Development Co.,</u> Inc., 1994 WL 879823 (Mass. Super. 1994) (same).

**C.    <u>F&G Is Entitled To Recover All Of Its Losses, Attorneys' Fees And Expenses Pursuant To The GAI.</u>**

"Like any other terms of a contract, indemnity provisions should be interpreted according to their plain, unambiguous language." <u>Devine v. Roche Biomedical Laboratories, Inc.,</u> 637 A.2d 441, 446 (Me. 1994), <u>citing</u> <u>Fowler v. Boise Cascade Corp.,</u> 948 F.2d 49, 55 (1st Cir. 1991); <u>see also</u> <u>Bay Bank Middlesex v. 1200 Beacon Properties Inc.,</u> 760 F. Supp. 957, 963 (D. Mass. 1991) (where the wording of a contract is found to be unambiguous, the contract must be enforced according to its terms).

The Indemnity Agreement executed by the Indemnitors provides that:

> Vouchers or other evidence or payments made by [F&G] shall be *prima facie* evidence of the fact and amount of the liability of the [Indemnitors] to [F&G].

<u>See</u> F&G' s Stmnt., ¶5.

The "prima facie evidence" clause in the GAI shifts to the Indemnitors the burden of proving that attorneys' fees and expenses are not recoverable. <u>See</u> <u>Fallon Electric Co., Inc. v. The Cincinnati Ins. Co.,</u> 121 F.3d 125, 128 (3rd Cir. 1997) (holding that such a "'prima facie evidence' clause in an indemnity agreement shifts to the indemnitor the burden of proving that the costs incurred were not recoverable" and concluding that the standard for determining "what an indemnitor must demonstrate to escape liability" is determined by the language of the indemnity agreement); <u>see also</u> <u>Doten's Construction, Inc. v. JMG Excavating & Construction Co., Inc.,</u> 2005 WL 3557410 (D. Me. 2006).

In order to defeat F&G's Motion, the Indemnitors must establish that F&G acted in bad faith in incurring the losses, fees and expenses, which they cannot do here. <u>See</u> <u>Constructora</u>

9

34028070v1 856797

Andrade Gutierrez, S.A. v. American Intern. Ins. Co. of Puerto Rico, 467 F.3d 38 (1st Cir. 2006) ("when an indemnity agreement gives a surety broad discretion to pay claims triggering the indemnity agreement, *the only defense an indemnitor may raise against a claim by the surety for indemnification is that the surety committed fraud or collusion, or otherwise acted in bad faith in paying the claim*") (emphasis added).  The "prima facie" clause in the GAI shifts to the Indemnitors the burden of proving bad faith.  United States Fid. & Guar. Co. v. Napier Elec. & Constr. Co., 571 S.W.2d 644, 645 (Ky. Ct. App. 1978) ("the indemnitors may successfully attack payments made by the surety only by pleading and proving fraud or lack of good faith by the surety"); Pike Creek Chiropractic Center, P.A. v. Robinson, 637 A.2d 418, 423 (Del. 1994) ("[the surety] will not be held harmless from [the principal's] acts or omissions unless it receives all legal expenses and attorneys' fees it has incurred, including those incurred in enforcing the Indemnification Clause"); J. D. Halstead Lumber Co. v. Hartford Acc. & Indem. Co., 38 Ariz. 228, 298 P. 925 (1931) ("under the provisions of the contract of indemnity . . . the rule is that it is not necessary for the [surety] under such provisions to show the necessity of the payment, or the reasonableness of the amount.  If the money was actually paid, the only way in which it can be attacked by the indemnitor is through a plea and proof of bad faith in the payment"), citing United States Fidelity & Guaranty Co. v. Hittle, 96 N. W. 782 (Iowa 1903).

Massachusetts courts have specifically held with respect to these indemnity agreement that "[w]ant of good faith involves more than bad judgment, negligence or insufficient zeal. It carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will." Hartford Acc. and Indem. Co. v. Millis Roofing and Sheet Metal, Inc., 11 Mass. App. Ct. 998 (1981).  The Indemnitors have no reasonable

10

expectation of establishing at trial that F&G acted in bad faith in incurring losses and expenses.

Based on the foregoing, F&G is entitled to summary judgment as a matter of law.

## III.     CONCLUSION

For the forgoing reasons, Fidelity and Guaranty Insurance Company respectfully requests

that its Motion for Summary Judgment be allowed and that this Honorable Court enter judgment

in F&G's favor against the Indemnitors, jointly and severally, to compensate F&G for the losses

that F&G has incurred in connection with the claims on the Bonds, as well as F&G's attorneys'

fees, costs and expenses incurred in prosecuting this action, all in accordance with the specific

terms and conditions of the GAI, plus interest as allowed by contract or by law, and such other

relief as this Court may deem just and appropriate.

Respectfully submitted,

**FIDELITY AND GUARANTY INSURANCE
COMPANY,**

By its attorney,


/s/ Eric H. Loeffler
Bradford R. Carver, BBO #565396
Eric H. Loeffler, BBO #641289
Hinshaw & Culbertson LLP
One International Place, Third Floor
Boston, MA 02110
(617) 213-7000

11

## <u>CERTIFICATE OF SERVICE</u>

I, Eric H. Loeffler, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February March 5, 2007.

/s/ Eric H. Loeffler_____
Eric H. Loeffler, BBO #641289
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 213-7000

34028070v1 856797