UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FIDELITY and GUARANTY
INSURANCE COMPANY,

    Plaintiff

v().    Civil Action No. 04-10250 EFH

STAR EQUIPMENT CORPORATION,
CHARLENE B. FORAN, JOHN J. FORAN
and TOWN OF SEEKONK,

    Defendants

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

    The defendants Star Equipment ("Star"), Charlene B. Foran and John J. Foran (collectively, "the Forans"), submit this memorandum in opposition to the motion of Fidelity and Guaranty Insurance Company ("F&G") for summary judgment.

**BACKGROUND**

    This matter involves a claim on a bond executed by F&G, as surety, on behalf of Star, a contractor that won a competitive bid for a Seekonk water main installation project. After commencing the work, Star encountered site conditions that were significantly different from those set forth in the job specification and bid package. It called this fact to the attention of Seekonk officials, and a dispute arose as to the respective obligations of the parties. After a meeting with the parties and their attorneys,

a resolution was achieved that called for Star to leave the job, for Seekonk to pay Star a portion of the outstanding balance then owed, and for F&G, as surety, to pay nothing. When Seekonk refused to finalize that settlement agreement, a dispute arose, resulting in this action.

The matter is now before the court on F&G's motion for the entry of a summary judgment.

**STATEMENT OF FACTS, INCLUDING DISPUTED MATERIAL FACTS**

Star and the Forans acknowledge as true the factual assertions concerning the execution and delivery of the Bond and General Agreement of Indemnity, described in F&G's motion. The disputed, and material, facts are as follows.

On or about July 21, 2003, while at work on the contract awarded it by the town of Seekonk, Star encountered site conditions that were materially different from those depicted in the bid package. (Foran Affidavit at ¶ 3). The subsurface was not gravel, which is readily excavatable; instead it was rock. The surface coat, which was represented to be five to six inches thick, was approximately one inch. (Foran Affidavit at ¶ 3) Excavation work became unduly burdensome, as the excavated trench continually collapsed, due to the insubstantial surface coat. (Foran Affidavit at ¶ 3) Star's principal, Jack Foran, advised Seekonk officials that he would be sustaining substantially greater costs to complete the work, and sought a contract adjustment. (Foran Affidavit at ¶ 4)

Notwithstanding these problems, Star continued its work – an exercise of good faith, and a display of its intention to honor its contractual obligations. (Foran Affidavit

2

at ¶ 5) After three weeks without resolution, Foran and Seekonk officials met – with their attorneys present – on August 8, 2003 to discuss their differences. (Foran Affidavit at ¶ 6)

The event most critical for consideration here occurred next, when - following that August 8th meeting - the parties agreed that Star would leave the job, Seekonk would pay for work completed, and the contract between the parties would be void without further recourse. (Foran Affidavit at ¶ 7) ; Affidavit of Attorney Mark Patrick Greene, Exhibit C to Defendant Charlene Foran's Answer and Cross-Claims [a true copy of which is attached hereto for convenience]["Greene Affidavit"]). It was only after the parties reached this agreement that Star left the job, and it was only because of this agreement that Star – which had dutifully continued its work for the three weeks prior despite this issue – determined it was proper to do so. (Foran Affidavit at ¶ 8; Greene Affidavit). F&G representatives were present at this meeting; their attorney provided input and advice as to how to resolve the dispute, and endorsed our actions at every step. Foran Affidavit at ¶¶ 10, 11.

When a subsequent dispute arose over what Seekonk owed Star, Seekonk unilaterally rescinded that agreement, declaring Star's "default" more than four weeks after Star had stopped working in accordance with the agreement of the parties that it do so. (Foran Affidavit at ¶ 9 ).

As Star had left the site only after reaching that agreement with Seekonk, and had – in fact – not abandoned the job or otherwise failed to perform under its contract, it cannot be said to have defaulted; there can, therefore, be no valid claim on the bond.

F&G acknowledges this in its first summary judgment filing.[1]

More importantly, F&G had full knowledge of the foregoing prior to the time it filed this action; an action that could have been avoided if F&G simply served a denial letter on Seekonk, in response to their alleged notice of claim. Foran Affidavit at ¶ 11.

**ARGUMENT**

The defendants adopt F&G's explication of the summary judgment standard, set forth in its memorandum of law at page six. F&G argues a right to recover under the express terms of the General Agreement of Indemnity signed by the Forans ("GAI"); asserting that the question of its recovery is subject only to a "bad faith" inquiry. Star and the Forans respond as follows.

**A. There exists a question of fact, requiring a trial, relative to the actions of F&G and its entitlement to recover under the GAI..**

In support of its claim that there exists no fact issue for trial, F&G blithely asserts as follows: "…absent a showing of bad faith, *which cannot be shown here,* the Indemnitors are liable to reimburse F&G for its losses and expenses." Memorandum of Law in Support of Fidelity & Guarantee's Motion for Summary Judgment at pp. 6-7 (emphasis added). F&G goes on to discuss the type of conduct constituting bad faith, in support of its bald assertion, citing both state and federal case law addressing the issue.

The "bad faith" standard receives a full explication in the case, *American Employers' Ins. Co. v. Horton*, 35 Mass. App. Ct. 921 (1993), cited by the plaintiff in its memorandum. There, the court explained "Want of good faith involves more than bad

---

[1] See, Fidelity and Guaranty Insurance Company's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment at ¶ 9.

4

judgment, negligence or insufficient zeal. It carries an implication of a dishonest purpose, conscious doing of wrong, or <u>breach of duty through motive of self-interest</u> or ill will." <u>Id.</u>, at p. 924 (citation omitted).

Here, Star and the Forans assert that F&G breached its duty to them under the indemnity agreement by (a) failing to simply deny the Seekonk "claim," knowing as it did that the claim was without merit; and (b) settling the claim in the manner it did – requiring Star and Foran to waive their counterclaim, and paying money to Seekonk with the intention of recovering said money from the Forans.  As set out in the Foran affidavit, the facts surrounding the inception of this case, and its partial settlement, are in great dispute.  Whether F&G breached its duty to Star and the Forans – in light of the knowledge it had about this matter, and its actions in supporting the decision of Star to leave the job when it did – is a fact question.  Moreover, it is a fact question that the Forans assert will be determined in their favor – thus excusing them from any indemnification obligation.

Although F&G asserts that no such issue exists here, the cases it relies upon in support of their argument are inapposite.  The *Horton* case, cited above, involved a scenario where the indemnitor claimed that the surety did not need to hire its own attorney to deal with the underlying claim, and failed to properly investigate the claim once it got involved.  The Forans make no such argument.

Rather, they assert that, having involved the surety from the inception of the underlying dispute; and, having received its endorsement for the actions taken in leaving the job, they should not now be held accountable to pay for the surety's decision to make a payment and settle the "dispute."  The surety played a role in the actions of Star and the

Forans in leaving the Seekonk job. It endorsed those actions. Star and the Forans relied on the F&G endorsement before taking any such action. They acknowledge that they are liable to F&G under the GAI for payment of expenses incurred in that process. However, once that process played out, F&G had a fundamental good faith obligation to acknowledge its role, and support the decision of Star and the Forans to leave the Seekonk job.

Instead, F&G has disavowed its role, settled with Seekonk because it was financially expedient to do so, and left the Forans to face a tab that F&G ran up with full knowledge of the foregoing. This is – at the least – a "want of good faith." The Forans assert that it is more. It is a breach of F&G's duty to them, a duty incurred once F&G involved itself in Star's determination of a Seekonk exit strategy – and that meets the standard enunciated by our appeals court to trump an indemnification claim by a surety.

A second case relied on by F&G, decided by the First Circuit, is *Gutierrez v. American International Ins. Co. of Puerto Rico* (467 F. 3d 38 [1st Cir. 2006]). There, the court interpreted an indemnity agreement that it characterized as "…very broad…" containing "…sweeping language…" that it reduced to five words: "If we pay…you pay." Id. at

Moreover, the First Circuit also discussed the fact that the law of Puerto Rico, unlike other jurisdictions, "implicitly allows for a surety to compromise a debt[]" Id. at citing *U.S. Fid. Guar. Co. v. PR Enters.*, No. 03-1338, 2005 WL 2244283, at *4 (D.P.R. Sept. 15, 2005) (relying on 31 P.R. Laws Ann. 4911-13).

*Gutierrez* is nothing more than a case about a particularly onerous surety contract entered into in a jurisdiction where such contracts allow for what admittedly occurred

6

here: compromise of a debt. But this particular contract is not so onerous, and is entered into in Massachusetts, where the obligation of the surety includes a modicum of good faith – the issue presented here.

### B. Star and the Forans have a legal defense to this claim, resulting from its August, 2003 settlement with Seekonk – a defense which is the subject of a fact dispute.

F&G's right to indemnification is dependent upon the scope of its liability in this action, which has always been contingent upon the liability, if any, of Star. See Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 732 (1996) (surety not liable unless his principle is liable); R.I. Hosp. Trust Natl. Bank v. Ohio Cas. Ins. Co., 789, F.2d 74, 78 (lst Cir. 1986) (same). Additionally, the release of the principal discharges the surety as a matter of law. Chicago Title Ins. Co. v. Lumbermen's Mut.Cas. Co., 120 Md. App. 538, 551 (1998); see also RESTATEMENT (THIRD) SURETYSHIP & GUARANTY §39.

Where, as here, Star was clearly not liable to Seekonk; and, in fact was discharged from liability by Seekonk in August of 2003 (See, Affidavit of John Foran at ¶ 7) with the approval of the surety, F&G's claim for indemnification must fail as a matter of law. In order, however, to get to that conclusion, the court must review the events of August, 2003 to determine whether Star and the Forans reasonably relied, to their detriment, on the representations of Seekonk and F&G officials when they left the job – thereby triggering the Seekonk "claim" that spawned this action.

F&G attempts to avoid this defense against its claim by posing this case as a simple surety contract action – which it is not. F&G involved itself with the resolution

of this matter in 2003; involvement which now appears to have been to the detriment of Star and the Forans. That involvement, and the facts presented here, make this case a very different one from the cases cited by F&G in its memorandum – none of which involve a bonding company that was notified at the inception of troubles, and actively participated in (what was believed to be) their resolution. These facts, set out in the affidavits of John Foran and Attorney Mark Patrick Green, are the basis for the defense in this action, and the reason why a trial is necessary.

**CONCLUSION**

For all of the foregoing reasons, and those raised by counsel at oral argument, Star Equipment, John Foran and Charlene Foran respectfully request that this motion be denied.

By their attorney,

    /s/
James S. Timmins BBO # 547512
55 Willard Street
Quincy MA 02169
(617) 376-0700

DATE:   March 19, 2007